# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

_____

**EATON CORPORATION,**
**Plaintiff,**

**v.** **Case No. 15-C-1157**

**WESTPORT INSURANCE CORPORATION**
**F/K/A PURITAN INSURANCE COMPANY,**
**Defendant.**
_____

### DECISION AND ORDER

The plaintiff, Eaton Corporation, filed this suit against Westport Insurance Corporation. Eaton alleges that Westport has wrongly failed to provide coverage for asbestos-related claims under an excess insurance policy that Westport's predecessor issued to Eaton's predecessor in 1978. Before me now is Westport's motion to dismiss Eaton's suit under the doctrine of _forum non conveniens_, or, in the alternative, to transfer the suit to the United States District Court for the Northern District of Ohio.

## I. BACKGROUND

Cutler-Hammer, Inc. was a manufacturer of electrical equipment. In 1978, it was a Wisconsin corporation headquartered in Milwaukee, Wisconsin. That year, Westport's predecessor, Puritan Insurance Company, issued an excess insurance policy to Cutler-Hammer that covered, among other things, liability for personal-injury claims. The policy was in effect from January 1, 1978 to November 1, 1978. In 1979, Eaton acquired Cutler-Hammer through a merger. Since that time, Cutler-Hammer has been operated as a division of Eaton. Eaton is an Ohio corporation that maintains its principal place of business in Cleveland, Ohio. Westport is a Missouri corporation with its principal place of business in Overland Park, Kansas.

1

By the 1980s, various lawsuits had been filed against Eaton in different courts throughout the United States alleging personal injuries caused by exposure to asbestos. Some of these suits alleged exposure to asbestos contained in products that were manufactured by Cutler-Hammer before the merger with Eaton, and by Eaton in the continuation of Cutler-Hammer's business. However, other suits were not connected to Cutler-Hammer. These suits alleged personal injuries caused by exposure to asbestos at Eaton's premises or in products manufactured by Eaton's other divisions.

In March 2013, Eaton filed a lawsuit in state court in Cleveland, Ohio, against a number of different insurance companies that had issued liability policies to Eaton. That suit remains pending. In the Ohio suit, Eaton seeks a declaration of its rights with respect to coverage for asbestos-related claims involving premises and products that are not connected to Cutler-Hammer or to Eaton's Cutler-Hammer division. Westport is not a defendant in the Ohio action, and the complaint expressly states that coverage issues relating to Cutler-Hammer claims are excluded from that action.

Around the same time that Eaton filed the Ohio action, it informed Westport that coverage for Cutler-Hammer asbestos-related claims under various underlying insurance policies had been exhausted, and that therefore Westport was now obligated to provide coverage under the excess policy that Puritan had issued to Cutler-Hammer in 1978. After Westport refused to accept Eaton's claim, Eaton commenced this action in state court in Milwaukee County. On September 24, 2015, Westport removed the action to this court.

A short time later, Westport filed its motion to dismiss this case based on *forum non conveniens*. Westport contends that this action has no connection to Wisconsin, and that it would be more convenient for the parties to litigate in Ohio state court, where

2

Eaton's action against its other insurers is pending. Alternatively, Westport moves to transfer the case to the United States District Court for the Northern District of Ohio, which holds court in Cleveland.

## II. DISCUSSION

### A. *Forum Non Conveniens*

The common law doctrine of *forum non conveniens* allows a court to dismiss a suit over which it would normally have jurisdiction in order to best serve the convenience of the parties and the ends of justice. *Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*, 589 F.3d 417, 421 (7th Cir. 2009). When a court dismisses a case for this reason, it concludes that the dispute should be heard in some other forum, and the expectation is that, following a *forum non conveniens* dismissal, the plaintiff will re-file the suit in the more appropriate forum (assuming that the statute of limitations would not bar the re-filing). In federal court, *forum non conveniens* normally applies only in cases where the alternative forum is abroad. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). However, it may also apply "in rare instances where a state or territorial court serves litigational convenience best." *Id.*

While a court may consider a variety of factors when deciding whether to dismiss a suit based on *forum non conveniens*, the focus is on "the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Fischer v. Magyar Államvasutak Zrt.*, 777 F.3d 847, 866 (7th Cir. 2015) (quoting *Sinochem*, 549 U.S. at 429). "Thus, when an alternative forum has jurisdiction to hear a dispute, a case can be dismissed if trial in the plaintiff's chosen forum would be more oppressive to the defendant than it would be convenient to the plaintiff or if the

3

forum otherwise creates administrative and legal problems that render it inappropriate." *Id.*

When deciding whether to dismiss a case based on *forum non conveniens*, a court first determines whether there is an adequate alternative forum available to hear the case. *See id.* at 867. If so, the court then evaluates the various "private and public interest factors" (which I identify below) to see whether the balance counsels in favor of dismissal. *See id.*

### 1. Adequacy of alternative forum

A forum meets the adequate alternative forum requirement when the forum is both available and adequate. *Fischer*, 777 F.3d at 867. An alternative forum is "available" if all parties are amenable to process and are within the forum's jurisdiction. *Id.* An alternative forum is "adequate" when the parties will not be deprived of all remedies or treated unfairly. *Id.*

In the present case, the alternative forum is the state court in Cleveland, Ohio. That forum is "available." The court is in Eaton's home state, and thus of course Eaton may file suit there. Moreover, Westport is amenable to process and subject to the jurisdiction of the Ohio state courts in connection with this suit. Westport has stated in its brief that it consents to be sued in Ohio. S*ee* Br. in Supp. at 8, ECF No. 10. Eaton points out that no officer of Westport that has authority to bind the company has submitted an affidavit consenting to suit in Ohio. However, Westport would likely be bound by its counsel's representation to the court that it consents to be sued in Ohio, either under the doctrine of judicial estoppel or principles of agency law. But even if Westport would not be bound by its counsel's representation, Eaton has pointed to no facts suggesting that Westport would not be amenable to service of process or personal

4

jurisdiction in Ohio in connection with this suit, and I would be surprised if it turns out that it is not. Thus, I conclude that the Ohio state court is "available." That court is obviously also "adequate," in that it will not deprive Eaton of all remedies or treat it unfairly.

### 2. Evaluation of private and public interest factors

Where another adequate forum is available, the district court next balances the private interests of the parties and the public interests of the alternative forums to determine whether those balances favor a different forum. *Fischer*, 777 F.3d at 868. With respect to private interests, courts examine (1) the relative ease of access to sources of proof; (2) the availability of compulsory process and costs for attendance of witnesses; (3) the possibility of view of premises, if appropriate; and (4) other practical issues, including ease of enforcement of any ultimate judgment. *Id.*

In the present case, the private interests do not weigh heavily in favor of the Ohio state court. It is true that the sources of proof are likely to be located primarily in Ohio because that is where Eaton's headquarters are located. However, the central issue in this case is whether Eaton has exhausted coverage under the various underlying policies to which the Westport policy is excess. Proof relating to this issue is likely to consist primarily of documents, such as copies of insurance policies, claim files, and payment records. In today's world, the actual physical location of these documents has almost no bearing on the convenience of litigating in a given forum. That is because documents can be scanned and transmitted electronically. *See In re Hudson*, 710 F.3d 716, 719 (7th Cir. 2013). Even if the documents are not transmitted electronically, they could easily be copied and shipped to Westport's counsel. Indeed, I would be surprised if anyone from Westport stepped foot on Eaton's premises in order to review and copy

5

the documentary evidence that is relevant to this case. In any event, because the documents will be located in Ohio whether or not this case is litigated in Wisconsin, dismissing this case in favor of an Ohio forum will not make access to those documents any easier for Westport, which has its headquarters in Kansas.

Given that the evidence in this case will consist primarily of documents, I expect that the witnesses will be mostly records custodians and others who are or were responsible for managing Eaton's insurance claims and the underlying personal-injury suits. Again, because Eaton is headquartered in Ohio, I would expect many of these witnesses to be located there. Thus, it would likely be somewhat easier and cheaper for these witnesses to attend trial in Ohio. However, most of the Ohio witnesses will be Eaton employees. Because Eaton chose to file suit in Wisconsin, it will likely be Eaton rather than Westport that bears the witnesses' travel costs. For the same reason, I would expect that Eaton will agree to produce these witnesses in Wisconsin without Westport's issuing subpoenas, and thus Westport will not have to worry about whether the witnesses are within the subpoena power of a Wisconsin court. In any event, if compulsory process proves to be necessary and unavailable, Westport could videotape the witnesses' testimony in Ohio in advance of trial. *See Hudson*, 710 F.3d at 719. Again, because most of the proof in this case is likely to be documentary, Westport will not be burdened or prejudiced if the few witnesses that are called at trial must give their testimony by videotape rather than in person.

The third private-interest factor, the need for a view of premises, is not applicable to this case because premises are not involved.

Under the remaining private-interest factor, I examine whether there are any other practical issues that favor litigation in Ohio state court. Here, Westport points to

6

the pending lawsuit in Ohio state court in which Eaton has sued its other insurers in connection with asbestos-related personal-injury claims. Westport notes that if Eaton's Wisconsin lawsuit is dismissed, Eaton may re-file it in Ohio and have it consolidated with that pending action. This, Westport contends, will "promote consistency and will discourage the potential for conflicting judgments." Br. in Supp. at 9, ECF No. 10. However, Westport is not a defendant in the pending Ohio case, and that case involves asbestos claims that are unrelated to the claims at issue in this suit. As noted, the complaint in the Ohio case expressly states that claims for insurance coverage for Cutler-Hammer products are not included in the action, and that instead the claims at issue relate to coverage for asbestos injuries allegedly caused by Eaton's other product lines and its premises. Westport has not explained how litigation involving these unrelated insurance claims could possibly result in rulings or judgments that are inconsistent with any rulings or judgments that might be entered in this case.[1] Nor can I see how separate litigation on these unrelated claims could lead to conflicting rulings or judgments. Thus, the fact that Eaton has an asbestos-related insurance-coverage action pending in Ohio state court does not make that court a more appropriate forum for the litigation of this case.

I next turn to the public-interest factors, which

include the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in

---

[1] Westport states that it "belie[ves]" that Eaton is tendering Cutler-Hammer claims to some of the insurers that are involved in the Ohio case. Br. in Supp. at 4, ECF No. 10. However, even if Westport's belief is correct, that would not give rise to a risk of conflicting judgments, as any Cutler-Hammer claims involving those insurers have not been alleged in the Ohio case.

> conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Fischer*, 777 F.3d at 868 (quoting *Stroitelstvo*, 589 F.3d at 425). Here, I see no administrative difficulties stemming from court congestion. Moreover, the local interest in having localized disputes decided at home does not favor litigation in Ohio. Westport has no meaningful connection to Ohio. Although Eaton has its headquarters in Ohio, this suit involves an insurance policy issued to a corporation that had its headquarters in Wisconsin at the time the insurance was purchased and during the period in which the policy was in force. Thus, the suit has connections to both Ohio and Wisconsin. As for issues relating to choice of law, Eaton contends that Wisconsin law governs its claims, and Westport has not argued that Ohio law applies. Thus, this factor favors litigation in Wisconsin. Finally, because, as I have noted, Wisconsin has a connection to the subject matter of this suit, it is not unfair to burden its citizens with jury duty.

In short, I conclude that the balance of private and public interests does not favor litigation in Ohio state court. Although some of the evidence will be located in Ohio, Westport will not be significantly inconvenienced by a trial in Wisconsin rather than Ohio. All of the other factors are either neutral or favor litigation in Wisconsin. Finally, I must give some weight to Eaton's choice of a Wisconsin forum. *See Abad v. Bayer Corp.*, 563 F.3d 663, 666–67 (7th Cir. 2009). Thus, this is not one of the "rare instances" in which a federal court should dismiss a case based on *forum non conveniens* so that the action may be re-filed in a state, rather than a foreign, court. *Sinochem*, 549 U.S. at 430.

**B.     Transfer under 28 U.S.C. § 1404(a)**

As an alternative to outright dismissal based on *forum non conveniens*, Westport seeks to have this case transferred to the United States District Court for the Northern District of Ohio under 28 U.S.C. § 1404(a). Section 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Many of the same factors that are relevant to *forum non conveniens* are relevant to determining whether to transfer venue under § 1404(a).  *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (identifying factors that are relevant to determining whether to transfer venue).  However, the showing of inconvenience necessary to justify a transfer under § 1404(a) is less exacting than the showing required to obtain a dismissal on grounds of *forum non conveniens*.  *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955); *Hudson*, 710 F.3d at 718.

Here, I conclude that convenience and the interest of justice do not require transferring this case to the Northern District of Ohio.  My balancing of the relevant factors is the same as it was with respect to *forum non conveniens*.  Although most of the documents and some of the witnesses are located in Ohio, the ability to easily transmit documents and obtain testimony by video (if necessary) makes trying the case in Wisconsin convenient.  The claims in this case will likely be governed by Wisconsin law, which favors litigation here rather than in federal court in Ohio.  The pendency of Eaton's claims against its other insurers in state court in Ohio is irrelevant.  Docket congestion is not a concern.  Both Wisconsin and Ohio have connections to this suit, and thus neither state has a greater interest in having the case litigated in a local court

9

than the other.  Finally, I must give some weight to Eaton's choice of forum, which favors litigation in Wisconsin.  Thus, even after accounting for the fact that the showing of inconvenience required to obtain a change of venue is less exacting than that required to obtain dismissal under *forum non conveniens*, I conclude that a transfer to the Northern District of Ohio is not warranted.

### III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that Westport's motion to dismiss, or, in the alternative, to transfer venue, is **DENIED**.

Dated at Milwaukee, Wisconsin, this 6th day of June, 2016.


s/ Lynn Adelman

_____
LYNN ADELMAN
District Judge