EATON CORPORATION,

        Plaintiff,

v.

WESTPORT INSURANCE CORPORATION
(f/k/a PURITAN INSURANCE COMPANY
for itself and as successor by merger to
EMPLOYERS REINSURANCE
CORPORATION)
5200 Metcalf Avenue
Overland Park, KS 66202-1391;

AIU INSURANCE COMPANY
175 Water Street, 24th Floor
New York, NY 10038;

GRANITE STATE INSURANCE COMPANY
175 Water Street, 18th Floor
New York, NY 10038;

NEW HAMPSHIRE INSURANCE
COMPANY
175 Water Street, 18th Floor
New York, NY 10038;

NORTH RIVER INSURANCE COMPANY
305 Madison Avenue
Morristown, NJ 07960

        Defendants.

Case No. 2:15-cv-01157-LA

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT RELIEF, BREACH OF CONTRACT AND DAMAGES**

**JURY TRIAL DEMANDED**

Plaintiff Eaton Corporation ("Eaton"), by and through its counsel of record, and for its claims for relief against the above-named Defendants alleges and shows the Court as follows:

## PARTIES

1. Eaton, as successor in interest to Cutler-Hammer, Inc. ("Cutler-Hammer"), is an Ohio corporation with its principal place of business in Cleveland, Ohio. During all times relevant to this action, Cutler-Hammer had its principal place of business in Milwaukee, Wisconsin.

2. The defendants are insurance companies (collectively, the "Insurers") that previously issued the insurance policies at issue here (collectively, the "Subject Policies"). Exhibit A identifies all of the Insurers and their respective places of incorporation and principal places of business, upon information and belief.

3. Upon information and belief, Defendant AIU Insurance Company is a New York corporation with its principal place of business in New York.

4. Upon information and belief, Defendant Granite State Insurance Company is an Illinois corporation with its principal place of business in New York.

5. Upon information and belief, Defendant New Hampshire Insurance Company is an Illinois corporation with its principal place of business in New York.

6. Upon information and belief, Defendant North River Insurance Company is a New Jersey corporation with its principal place of business in New Jersey.

7. Upon information and belief, Defendant Westport Insurance Corporation f/k/a Puritan Insurance Company ("Westport") is a Missouri corporation with its principal place of business in Kansas.

## VENUE AND JURISDICTION

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Eaton's claims, including the decision by Cutler-

Hammer to procure the Subject Policies, the issuance of the Subject Policies to Cutler-Hammer, and the payment of premiums by Cutler-Hammer occurred in this District, and because Cutler-Hammer maintained its headquarters in this District when the Subject Policies were issued.

9. Venue and jurisdiction are also proper in this District because, upon information and belief, the Insurers:

    a. are or were licensed or authorized to do business in Wisconsin;

    b. have, within the relevant time periods, transacted business in Wisconsin, including the selling of insurance or reinsurance in Wisconsin, the assumption of insurance policies covering risks in Wisconsin, and/or handling of insurance claims involving risks located in Wisconsin;

    c. have agreed in the insurance policies they issued or assumed to submit to the jurisdiction of any Court of competent jurisdiction within the United States, to comply with all requirements necessary to give such Court jurisdiction and to have all matters arising under their policies determined in accordance with the law and practice of such Court;

    d. have sufficient minimum contacts with the State of Wisconsin such that the assumption of jurisdiction will not offend traditional notions of fair play and substantial justice;

    e. have realized, and sought to realize, pecuniary benefit from their business activities in Wisconsin;

    f. have made, and continue to make, business decisions which have a direct and substantial impact in Wisconsin;

    g. have authorized agents to transact business in Wisconsin on their behalf; and/or

    h. have made use of the Courts of Wisconsin to further their business interests.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 based on diversity of citizenship because Eaton is domiciled in Ohio, no Insurers are domiciled in Ohio, and the damages at issue herein exceed $75,000.

11. Jurisdiction is also proper since this action seeks a declaration pursuant to 28 U.S.C. §2201 of the parties' rights and obligations under the Subject Policies.

## NATURE OF THE CAUSE OF ACTION

12. Eaton brings this action for declaratory judgment and breach of contract to recover damages due to the Insurers' failure to honor their obligations to provide insurance coverage for certain asbestos-related bodily-injury claims (defined below) under general liability policies of insurance issued by the Insurers to Cutler-Hammer or that insure Cutler-Hammer risks.

13. Eaton seeks a declaration that each Insurer is obligated to pay all sums relating to the defense and indemnity of any C-H Claim (as defined below) that triggers one or more of its Subject Policies, subject to any applicable limits of liability set forth in such Subject Policies.

14. Eaton also seeks a determination that Westport breached the obligation of good faith and fair dealing relating to its Policy.

15. This action was removed to this Court on September 24, 2015, and the Court entered Case Management Order No. 1 on April 14, 2016. Under that Order, the parties are entitled to file an Amended Complaint adding additional parties and policies without leave of Court up to March 24, 2017.

## BACKGROUND

### Cutler-Hammer Asbestos Bodily Injury Claims

16. Eaton has been named in various lawsuits in which the claimants allege, among other things, continuous or progressive bodily injury arising from exposure to asbestos allegedly contained in products manufactured, distributed or sold by Cutler-Hammer and/or by Eaton in its continuation of the business of Cutler-Hammer (the "C-H Claims").

17. Asbestos-related injury is alleged to involve a continuous and progressive injurious process commencing with the first exposure to asbestos particles or fibers, which process

continues progressively while such particles or fibers are present in the lungs or other organs and culminates in manifestation of recognizable injury, including sickness, disease, or death.

18. Over the past decades, Eaton and its underlying insurers have paid millions of dollars in defense and indemnity costs for the C-H Claims.

19. In addition to the C-H Claims currently pending against Eaton, Eaton expects to continue to be named in additional C-H Claims in the future.

## The Insurance Policies

20. The Subject Policies are listed by issuing Insurers on Exhibit B.

21. The Subject Policies are voluminous and believed to be in the Insurers' possession; accordingly they are not attached here. Eaton will provide copies of the Subject Policies upon request.

22. Effective March 30, 1979, Cutler-Hammer merged into Eaton, with Eaton being the surviving entity.

23. Eaton is the legal successor to Cutler-Hammer with respect to the Subject Policies.

24. The Subject Policies insure, among other things, liability for bodily injury or death allegedly caused by exposure to asbestos-containing products.

25. Eaton is entitled to defense and indemnity coverage under the Subject Policies with respect to each C-H Claim up to the full amount of any applicable limits of the Subject Policies and, when more than one Subject Policy is responsible for a Claim, Eaton is entitled to select the Subject Policy or Policies under which it is to be indemnified and/or defended for that C-H Claim.

### Westport's Conduct

26. Eaton provided timely notice of the C-H Claims to Westport and has otherwise complied with all conditions under Westport Policy No. ML650381 ("Westport Policy").

27. Eaton has provided voluminous information to Westport concerning the C-H Claims and losses in response to Westport's requests and has demanded that Westport honor its coverage obligations under the Westport Policy.

28. On information and belief, Westport referred the claim to coverage counsel and neglected properly to investigate Eaton's claim for coverage.

29. To date, Westport has failed and refused to pay any amounts for C-H Claims under the Westport Policy.

### COUNT I - BREACH OF CONTRACT - DEFENDANT WESTPORT

30. Eaton incorporates by reference the allegations of the foregoing paragraphs, as if fully set forth herein.

31. According to the applicable legal standards and the terms and conditions of the Westport Policy, Westport is obligated to pay "all sums," subject to any applicable limits of liability, for each C-H Claim for which the alleged date of first exposure to asbestos or an asbestos-containing product occurs prior to or during the Westport Policy period.

32. All conditions precedent to recovery under the Westport Policy have been satisfied, waived or precluded by estoppel, and Eaton is in full compliance with all terms of the Westport Policy.

33. Westport has failed and/or refused to acknowledge, accept or undertake without reservation its contractual obligations pursuant to the Westport Policy.

34. Westport has failed and refused to pay any amounts for the covered C-H Claims.

35. Thus, Westport is in breach of its contractual obligations under the Westport Policy.

36. As a direct and proximate result of the aforesaid breach by Westport, Eaton has sustained damages in an amount to be proven at trial.

WHEREFORE, Eaton prays for judgment against Westport for:

- A. Direct, consequential, and incidental compensatory damages caused by Westport's breach of the Westport Policy in an amount to be determined at trial, together with pre-judgment and post-judgment interest;
- B. An award of specific performance of the Westport Policy;
- C. Costs of suit;
- D. Attorneys' fees; and
- E. Such other and further relief, including any appropriate equitable relief, as the Court may deem just and proper.

## COUNT II - BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING AGAINST WESTPORT

37. Eaton incorporates by reference the allegations of the foregoing paragraphs, as if fully set forth herein.

38. According to the applicable legal standards and the terms and conditions of the Westport Policy, the Westport Policy contains an implied covenant of good faith and fair dealing on the part of Westport.

39. Eaton has provided voluminous documentation to Westport to satisfy Westport's requests for information concerning the exhaustion of the underlying policies.

40. Despite the information provided by Eaton and the years-long delay, Westport has refused to honor its coverage obligations or even to make a determination of coverage. Instead, it continues to request yet more information and to delay in making a decision on coverage.

41. Meanwhile, Eaton continues to be named in C-H Claims and to incur additional defense and indemnity costs.

42. The Westport Policy obligates Westport to pay defense and indemnity costs relating to C-H Claims that trigger the Westport Policy.

43. On information and belief, Westport lacks a reasonable basis in law or fact to deny Eaton's claim for coverage.

44. On information and belief, Westport either knew there was no reasonable basis to deny the claim or acted with reckless disregard for whether such a basis existed.

45. On information and belief, Westport has put its own interests above those of its insured, Eaton.

46. Westport has breached its duty of good faith and fair dealing to Eaton.

47. As a result of Westport's breach of its duty of good faith and fair dealing, Eaton has suffered damages.

WHEREFORE, Eaton prays for judgment against Westport as follows:

A. Direct, consequential, and incidental compensatory damages caused by Westport's breach of its duty of good faith and fair dealing in an amount to be determined at trial, together with pre-judgment and post-judgment interest;

B. Punitive and/or exemplary damages for Westport's breach of its duty of good faith and fair dealing;

C. An award of specific performance of the Westport Policy;

D. Costs of suit;

E. Attorneys' fees; and

F. Such other and further relief, including any appropriate equitable relief, as the Court may deem just and proper.

### COUNT III - DECLARATORY JUDGMENT
### AND OTHER EQUITABLE RELIEF - ALL INSURERS

48. Eaton incorporates by reference the allegations of the foregoing paragraphs, as if fully set forth herein.

49. All conditions precedent to recovery under the Subject Policies have been satisfied, waived or precluded by estoppel, and Eaton is in full compliance with all terms of the Subject Policies.

50. As with Westport, Eaton has provided timely notice to the other Insurers regarding the C-H Claims and has requested that they defend and indemnify Eaton for the C-H Claims.

51. Each Insurer has failed and/or refused to acknowledge, accept or undertake without reservation its contractual obligations, including the duty to defend (and/or duty to pay for the costs of defense) and indemnify Eaton, pursuant to its Subject Policies in connection with the C-H Claims that trigger one or more of its Subject Policies.

52. Eaton seeks a declaration that, according to the applicable legal standards and the terms and conditions of the Subject Policies, each Subject Policy on the risk from the time that a claimant asserting a C-H Claim was allegedly first exposed to asbestos or an asbestos-containing product through the manifestation of the claimant's disease or injury is "triggered" and therefore is obligated to provide coverage, subject to any applicable limits of liability in that Policy.

53. Eaton seeks a declaration that the Subject Policies have been triggered and that the Insurers are obligated to provide Eaton with a complete and full defense and to pay all sums that

Eaton incurs for judgments, settlements, and defense costs in connection with each C-H Claim and in connection with any C-H Claim that may be brought in the future, subject to any applicable limits of the Subject Policies.

54. Eaton seeks a declaration that, under the Subject Policies, and as provided by law, Eaton may select one or more Subject Policies triggered by a C-H Claim to pay all losses associated with that C-H Claim, regardless of whether the C-H Claim also triggers other policies, because Eaton is permitted to designate the order in which the Subject Policies that are liable to provide coverage for a C-H Claim shall respond to such Claim.

55. On information and belief, the Insurers dispute all of the foregoing requests for declaratory relief in this Court.

56. An actual and justiciable controversy presently exists between Eaton and the Insurers with respect to the parties' rights and obligations under the Subject Policies relating to the C-H Claims. This Court has jurisdiction and power to declare the parties' respective rights and obligations under the Subject Policies pursuant to 28 U.S.C. §2201.

WHEREFORE, Plaintiff prays for judgment against the Insurers:

A. Declaring that each Insurer, consistent with the terms of its Subject Policies:

1. has a duty to defend Eaton against all pending and future C-H Claims that trigger one or more of its Subject Policies;

2. must pay, subject to any applicable limits of liability set forth in its Subject Policies, all attorney fees and expenses incurred by Eaton in defense of each pending and future C-H Claim that triggers one or more of its Subject Policies;

3. must pay, subject to any applicable limits of liability set forth in its Subject Policies, all sums that Eaton is obligated to pay by settlement or judgment as a result of each pending and future C-H Claim that triggers one or more of its Subject Policies; and

B. Enjoining the Insurers from refusing to defend and indemnify Eaton against, or pay defense costs for, the pending and future C-H Claims that trigger their respective Subject Policies, subject to any applicable limits of liability set forth in the Subject Policies;

C. Declaring that, under the Subject Policies, and as provided by law, each Subject Policy on the risk from the time that a claimant asserting a C-H Claim was allegedly first exposed to asbestos or an asbestos-containing product through the manifestation of the claimant's disease or injury is "triggered" and therefore is obligated to provide coverage, subject to any applicable limit of liability in that Policy;

D. Declaring that, under the Subject Policies, and as provided by law, Eaton may designate one or more Subject Policies triggered by a C-H Claim to pay all losses associated with that C-H Claim, regardless of whether the C-H Claim also triggers other policies, because Eaton is permitted to designate the order in which the Subject Policies triggered by a C-H Claim shall respond to such Claim;

E. For costs of suit;

F. For attorneys' fees; and

G. For such other and further relief, including any other appropriate equitable relief, as the Court may deem just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

Dated this 25th day of January, 2017.

von BRIESEN & ROPER, S.C.


By: s/Carmen N. Anderson
Carmen N. Anderson, State Bar No 1024453
Kelly J. Noyes, State Bar No. 1064809
411 East Wisconsin Ave. #1000
Milwaukee, WI 53202
Phone: 414.276.1122
Fax: 414.238.6635
canderso@vonbriesen.com
knoyes@vonbriesen.com

Kay M. Brady, Esquire (admitted *pro hac vice*)
John T. Waldron, Esquire (admitted *pro hac vice*)
Max Louik, Esquire (admitted *pro hac vice*)
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
Tel: +1.412.355.6500
Fax: +1.412.355.6501
Kay.Brady@klgates.com
John.Waldron@klgates.com
Max.Louik@klgates.com

Attorneys for Plaintiff