# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EATON CORPORATION,
    Plaintiff,

  v.

WESTPORT INSURANCE COMPANY, et al.
    Defendants,

AIU INSURANCE COMPANY, et al.,
    Third-Party Plaintiffs

  v.

ALLSTATE INSURANCE CO., et al.
    Third-Party Defendants.

Case No. 15-C-1157

## DECISION AND ORDER

Eaton Corporation seeks a declaration of its rights under insurance policies that, according to Eaton, cover asbestos claims relating to products sold by Cutler-Hammer, Inc., and by Eaton in the continuation of Cutler-Hammer's business. Before me now is Eaton's motion for partial summary judgment against defendants AIU Insurance Company, Granite State Insurance Company, New Hampshire Insurance Company, and North River Insurance Company. (References to "the defendants" in this opinion mean these four insurers.) Eaton's motion focuses on three issues: (1) whether Wisconsin law, rather than Ohio law, applies to the defendants' policies; (2) whether the "continuous trigger" theory applies to the defendants' policies; and (3) whether the "all sums" method for allocating coverage among triggered policies applies to the defendants' policies.

## I. BACKGROUND

Cutler-Hammer, Inc., was a Wisconsin company that had its headquarters in Milwaukee from 1899 to 1979. On March 30, 1979, Cutler-Hammer merged into Eaton, with Eaton being the surviving entity. Since before the time of the merger, Eaton has been headquartered in Ohio.

From the early 1920s until the late 1970s or early 1980s, Cutler-Hammer's business included the sale of products with asbestos-containing components. These products were manufactured at plants located in Milwaukee, Wisconsin and Bowling Green, Kentucky. Many personal-injury suits have been filed against Cutler-Hammer and Eaton alleging injuries caused by exposure to the asbestos in these products. Most of the products at issue were manufactured by Cutler-Hammer before 1979, and over 99% of the personal-injury claims allege that the injured party was exposed to asbestos before 1979.

Prior to the 1979 merger, defendants AIU Insurance Company, Granite State Insurance Company, and New Hampshire Insurance Company issued liability insurance policies to Cutler-Hammer. These policies were procured by a broker in Wisconsin and were issued to Cutler-Hammer in Wisconsin. After the 1979 merger, defendant North River Insurance Company issued liability policies to Eaton. North River's policies were procured by a broker in Ohio and issued to Eaton in Ohio.

The defendants' policies are excess policies, by which I mean that they provide coverage only after the limits of underlying policies have been exhausted. The defendants' policies incorporate the terms and conditions of their respective underlying policies, and thus the policy terms and conditions relevant to Eaton's motion appear in

the underlying policies. Although the relevant terms are not the same in every underlying policy, the parties do not contend that differences in policy language matter to the outcome of Eaton's motion. For this reason, I will take representative language from a single policy and assume that the same result would obtain under the language of the other policies. The representative policy language, which appears in a policy issued by Harbor Insurance Company (which is one of the policies that underlies Granite State Insurance Company's excess policy), appears below:

> The Company hereby agrees . . . to indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability . . . imposed upon the Insured by law . . . for damages on account of . . . Personal Injuries . . . caused by or arising out of each occurrence happening anywhere in the world during the policy period.
>
> . . . .
>
> The term "Personal Injuries" . . . means . . . bodily injury, sickness, disease, disability or shock, including death arising therefrom, or, if arising out of the foregoing, mental anguish and mental injury . . . .

ECF No. 120-4 at 4.

In this suit, Eaton claims that it has exhausted the limits of the underlying policies and that the defendants must now provide coverage to Eaton in the asbestos personal-injury cases. To prove that this is so, Eaton will eventually have to prove which asbestos claims fall within the scope of the defendants' policies (and the underlying policies to which they are excess). In other words, Eaton will have to prove which asbestos claims "trigger" the policies. Generally, a covered injury that occurs during the policy period will trigger a policy. However, in cases involving ongoing exposure to a harmful substance, such as asbestos cases, the exact date of the injury is often uncertain, and the harm potentially accrues over several policy periods. In asbestos cases, for example, a

3

person may have been exposed to the insured's asbestos over a period of many years, and a diagnosable disease might not manifest itself until decades after exposure. Many different liability insurance policies may have been in force during the years between first exposure and manifestation. The issue of "trigger" asks which of these policies should be deemed to cover the eventual asbestos claim. To deal with this issue, courts have adopted four different theories. *See, e.g., Society Ins. v. Town of Franklin*, 233 Wis. 2d 207, 214 (Ct. App. 2000). Only two of these theories are relevant to Eaton's motion: (1) the "continuous trigger" theory, which provides that a claim triggers all policies in force from the time of the claimant's first exposure to asbestos through the time of manifestation of the claimant's disease; and (2) the "injury in fact" theory, which provides that the only policy triggered is the one in force at the time when the effects of the claimant's exposure resulted in an actual and compensable injury. *See id.*

A second issue—allocation of coverage—addresses how to allocate coverage to a triggered policy when a claimed injury does not occur entirely within the policy period. Again, this problem arises because asbestos injuries develop over long periods of time. The harm occurs over many years, including years in which the triggered policy was not in force. Allocation asks whether, once a policy is triggered, the insurer must pay for all damage caused by the claim even though the injury occurred partly within and partly outside the coverage period. Courts have generally taken one of two approaches to this issue. One approach is to allocate damages to the insurer pro rata based on the number of years its policy was in force. The other approach is the "all sums" approach, under which the insurer must pay for all damages resulting from an injury (up to the policy limit) so long as the injury triggered the policy.

4

Wisconsin has adopted both the "continuous trigger" theory and the "all sums" allocation method. *See Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 315 Wis.2d 556, 583–85 (2009). Eaton contends that Wisconsin law applies to the defendants' policies and that therefore I should find that they are subject to both the continuous-trigger theory and the all-sums allocation method. The defendants, however, contend that their policies are governed by Ohio law. Like Wisconsin, Ohio has adopted the all-sums allocation method. *See Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 769 N.E.2d 835, 840 (Ohio 2002). But no Ohio appellate court has adopted a theory of "trigger" for asbestos cases or other cases involving injuries that potentially accrue over time. The defendants contend that, if called upon to decide the question, the Ohio Supreme Court would adopt the injury-in-fact theory.

Although both Wisconsin and Ohio have adopted the all-sums allocation method, the defendants contend that Eaton has waived its right to use that allocation method by entering into a settlement with other insurance companies in which it allocated losses for asbestos claims pro rata. One of the defendants' codefendants, Westport Insurance Corporation, raised this same argument in response to Eaton's prior motion for summary judgment, in which Eaton sought to establish that the all-sums allocation method applied to Westport's policy. In deciding the prior motion, I concluded that Eaton had not waived its right to use the all-sums allocation method. *See* ECF No. 118. The defendants ask me to reconsider that conclusion and find that the pro rata allocation method applies to their policies.

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

As noted, the parties dispute whether Wisconsin or Ohio law applies to the defendants' policies. As a district court sitting in diversity, I must apply the choice-of-law rules of the state in which I sit. *See, e.g., NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 300 (7th Cir. 2018). Thus, I apply Wisconsin's choice-of-law rules to determine which state's law governs the policies.

In Wisconsin, as in most jurisdictions, a preliminary question in any choice-of-law analysis is whether the case presents an actual conflict of laws—that is, whether the law of the two states are different. *See Waranka v. Wadena Ins. Co.*, 353 Wis. 2d 619, 636 (2014); *Sharp ex rel. Gordon v. Case Corp.*, 227 Wis. 2d 1, 10–11 (1999). If the laws of the two states are the same, then the analysis stops and the court applies forum law. *Sharp*, 227 Wis. 2d at 11.

As noted above, both the Wisconsin Supreme Court and the Ohio Supreme Court have adopted the all-sums allocation method. Thus, the laws of the two states are the same as to allocation. But while the Wisconsin Supreme Court has adopted the continuous-trigger theory, the issue of trigger has not been decided by any Ohio appellate court. The defendants argue that, if the Ohio Supreme Court were to adopt a

trigger theory today, it would choose the injury-in-fact theory. The defendants base this argument on Ohio's general principles of insurance-contract interpretation. *See* Br. in Opp. at 13, ECF No. 137-1. But Ohio's general principles of insurance-contract interpretation are exactly the same as Wisconsin's. Indeed, every principle of Ohio insurance law cited by the defendants can be found in cases decided by the Wisconsin Supreme Court. The defendants cite an Ohio case stating that an insurance policy is a contract, that its interpretation presents a question of law, and that the terms of the contract must be given their plain and ordinary meaning. *See Sharonville v. Am. Employers Ins. Co.*, 846 N.E.2d 833 (Ohio 2006). Wisconsin cases also state this. *See, e.g., Danbeck v. American Family Mut. Ins. Co.*, 245 Wis. 2d 186, 193 (2001) ("[t]he interpretation of an insurance contract is a question of law"; "[t]he words of an insurance policy are given their common and ordinary meaning"). The defendants also cite an Ohio case stating that if the policy language is clear and unambiguous, the court may not resort to construction of that language. *See Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 597 N.E.2d 1096, 1102 (1992). Again, Wisconsin cases are in accord. *See Danbeck*, 245 Wis. 2d at 193 ("Where the language of the policy is plain and unambiguous, we enforce it as written, without resort to rules of construction or principles in case law.").

Because Ohio and Wisconsin use the same general principles of contract interpretation, the defendants cannot use those principles to show that Ohio and Wisconsin would adopt different trigger theories. If anything, the defendants' argument suggests that the Ohio Supreme Court would apply the continuous-trigger theory to the defendants' policies. In *Plastics Engineering*, the Wisconsin Supreme Court interpreted

7

policy language that was in all material respects identical to the language of the defendants' policies, *see* 315 Wis. 2d at 564, and found that such language incorporated the continuous-trigger theory, *id.* at 583. Thus, if nothing more than the plain meaning of the policy language determines the applicable trigger theory, then the Ohio Supreme Court should agree with the Wisconsin Supreme Court and apply the continuous-trigger theory to the defendants' policies.

In reality, of course, a court's choice of trigger theory is based on factors other than the policy language. The relevant language in a commercial general liability policy does not clearly state how to measure when an injury occurs in an asbestos case. *See Keene Corp. v. Ins. Co. of N. Am.*, 667 F.2d 1034, 1043 (D.C. Cir. 1981) ("In the context of asbestos-related disease, the terms 'bodily injury,' 'sickness' and 'disease,' standing alone, simply lack the precision necessary to identify a point in the development of a disease at which coverage is triggered."). Thus, when selecting trigger theories, courts consider factors such as equity, ease of administration, and the general purposes of liability insurance. *See id.* at 1041 (interpreting policy "in a manner that is equitable and administratively feasible and that is consistent with insurance principles, insurance law, and the terms of the contracts themselves").

Because a court's choice of trigger theory is based on factors other than the policy language, I cannot predict which trigger theory the Ohio Supreme Court would choose without knowing what other factors that court would consider and how it would weigh them. The defendants cite no Ohio appellate cases shedding light on these matters. Thus, I can do no more than guess at whether the Ohio Supreme Court would adopt a different trigger theory than the Wisconsin Supreme Court.

All of this raises the question: when the forum state's law on a matter is settled and the other state's law is uncertain, is there an actual conflict between the laws of the states on that matter? Eaton argues that there is no conflict in this circumstance, citing the Supreme Court of Illinois' decision in *Bridgeview Health Care Center v. State Farm Fire & Casualty Co.*, 10 N.E.3d 902 (Ill. 2014). In that case, the underlying legal question was whether a claim based on sending unsolicited faxes in violation of the Telephone Consumer Protection Act triggered coverage under a comprehensive general liability policy, and the parties disputed whether the law of Illinois or the law of Indiana applied. At the time of the decision, the Illinois courts had squarely addressed the legal question and concluded that a claim based on unsolicited faxes is covered. *Id.* at 904. However, no Indiana state court had addressed the question. *Id.* at 905. The Illinois Supreme Court concluded that, under this circumstance, the laws of Illinois and Indiana did not conflict and that therefore a choice-of-law determination was not required. *Id.* at 905–09.

In the course of its reasoning, the court rejected the suggestion that "when the law of another jurisdiction is uncertain, courts should undertake a choice-of-law analysis to determine which state's law applies." *Id.* at 908. Citing law from the Supreme Court of the United States, the Illinois Supreme Court reasoned that "'there can be no injury' in applying the local forum's law if that law is not in actual conflict with the law of another jurisdiction." *Id.* at 909 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985)). The Illinois Supreme Court also noted that finding a conflict based on the mere potential that the other state would decide the matter differently than the forum state in

9

the future made little sense, as "[t]here is always a 'potential' for differences to arise on state-law questions, even on matters that have previously been addressed." *Id.*

*Bridgeview* is an Illinois case, and as noted, I must apply the choice-of-law rules of Wisconsin. But, for two reasons, I believe that the Wisconsin Supreme Court would agree with *Bridgeview* and conclude that there is no conflict of law when the forum state has decided the legal question but the other state has not. First, *Bridgeview* is well reasoned, in that it recognizes that applying well-settled forum law does no injury to the other state when that state's law is unknown. Indeed, one of the purposes of doing choice of law is to apply the policy of the state that has the greatest interest in the controversy. *See In re Knippel's Estate*, 7 Wis. 2d 335, 333–34 (1959) (recognizing that "grouping of contacts" theory of choice of law has merit because it "gives to the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of [the] particular litigation."). A forum court cannot implement the other state's policy choice if that state has not yet made such a choice on the matter at hand. Thus, even if the other state has a greater interest in the controversy, it would make little sense for the forum court to create a conflict of law by guessing that the other state would decide the matter differently than the forum state has. Doing so would serve no interest of the other state.

Second, Wisconsin's choice-of-law rules recognize that when the law of another jurisdiction is unknown, the court applies forum law. In *Wilcox v. Wilcox*, the Wisconsin Supreme Court recognized that "where the foreign law is unknown, it is presumed to be the same as Wisconsin." 26 Wis. 2d 617, 622 n.3 (1965). This statement appeared in a

discussion about the difficulty of proving a foreign country's law, but there is no reason to think that the underlying principle would not apply when the non-forum jurisdiction has not decided the legal question at hand. In both instances, the forum court does not know what the other jurisdiction would do, so it presumes that it would do the same thing as the forum.

Another Wisconsin case, *Humana Medical Corp. v. Peyer*, recognizes that when neither the forum state nor the other state has decided the legal question, then there is no conflict and the court applies forum law. 155 Wis. 2d 714, 718 (1990). This case strongly suggests that the Wisconsin Supreme Court would likewise find no conflict when the forum has decided the question but the other state has not. By applying forum law when neither state has decided the question, the court implicitly recognizes that a court should not try to predict how another state would answer a legal question before deciding that there is no conflict. Instead, under the approach of *Humana*, the forum court establishes forum law and then presumes that the other state would establish the same law. Obviously, the same reasoning should apply when forum's law is clear but the other state's law is not. In both scenarios, the forum court does not try to predict how the other state would answer the legal question and instead presumes that its law is the same as the forum's. The only difference between *Humana* and the present case is that, here, the forum's law is already established. But this is not a difference that should require the forum court to predict how the other state would answer the legal question.

For these reasons, I conclude that, under Wisconsin's choice-of-law rules, there is no conflict of law when the forum state's law is clearly established but the other

11

state's law is uncertain. In that circumstance, a Wisconsin court applies Wisconsin law. Thus, the defendants' policies are subject to the Wisconsin Supreme Court's decision in *Plastics Engineering*, under which both the continuous-trigger theory and the all-sums allocation method apply to a liability policy that covers asbestos-related injuries.

The remaining issue is whether Eaton has waived its right to use the all-sums allocation method by settling with certain non-defendant insurers and allocating losses among them pro rata. As noted, I previously addressed this argument in the context of Westport Insurance Company's opposition to Eaton's prior motion for summary judgment. *See* ECF No. 118. The present defendants write that they "join, adopt, and incorporate Westport's [waiver] argument." Br. in Opp. at 21, ECF No. 137-1. They do not offer any new argument on the issue of waiver, other than to urge me to give deference to a decision of an Ohio district court on the meaning of Ohio law. The decision is *GenCorp, Inc., v. AIU insurance Company*, 297 F. Supp. 2d 995 (N.D. Ohio 2003). In my prior order, I did not find that *GenCorp* was wrongly decided. Instead, I found that it was distinguishable. *See* ECF No. 118 at 10–12. The defendants do not argue that I made a mistake in finding *GenCorp* distinguishable. Thus, even if *GenCorp* correctly states Ohio law (and even if Ohio law applied to the waiver issue), it would not be instructive here. Accordingly, I reject the defendants' waiver argument for the same reasons I gave in my order on Eaton's motion for summary judgment against Westport.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Eaton's motion for partial summary judgment against AIU Insurance Company, Granite State Insurance Company, New Hampshire Insurance Company, and North River Insurance Company (ECF No. 122) is

**GRANTED**. The court declares that (1) a "continuous" trigger of coverage applies such that each Cutler-Hammer Claim "triggers" each policy on the risk from the time of the claimant's first alleged exposure to asbestos through the time of manifestation of the claimant's disease, and (2) each policy triggered by a Cutler-Hammer Claim is independently liable in full for all sums arising from the Claim, subject to the policy's limits of liability.

**IT IS FURTHER ORDERED** that the parties' motions to restrict certain materials to the parties (ECF Nos. 129 & 140) are **GRANTED**. The materials relate to testimony by expert witnesses that did not bear on the outcome this motion, and which I did not even consider. Therefore, regardless of whether there is good cause to seal the materials, they may remain sealed. *See City of Greenville, Ill. v. Syngenta Crop Protection, LLC*, 764 F.3d 695, 698 (7th Cir. 2014) (the public has no right of access to documents that "cannot conceivably aid the understanding of judicial decisionmaking").

Dated at Milwaukee, Wisconsin, this 10th day of June, 2019.

              s/Lynn Adelman
              LYNN ADELMAN
              District Judge