# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| EATON CORPORATION, | ) | Case No. 2:15-cv-01157-LA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WESTPORT INSURANCE | ) | |
| CORPORATION (f/k/a PURITAN | ) | |
| INSURANCE COMPANY for itself and | ) | |
| as successor by merger to EMPLOYERS | ) | |
| REINSURANCE CORPORATION), AIU | ) | |
| INSURANCE COMPANY, GENERAL | ) | |
| REINSURANCE CORPORATION, | ) | |
| GRANITE STATE INSURANCE | ) | |
| COMPANY, INDEPENDENT | ) | |
| SPECIALTY INSURANCE COMPANY, | ) | |
| formerly known as FIREMAN'S FUND | ) | |
| INSURANCE COMPANY OF OHIO, | ) | |
| NEW HAMPSHIRE INSURANCE | ) | |
| COMPANY, and NORTH RIVER | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| AIU INSURANCE COMPANY, | ) | |
| GRANITE STATE INSURANCE | ) | |
| COMPANY, NEW HAMPSHIRE | ) | |
| INSURANCE COMPANY, and NORTH | ) | |
| RIVER INSURANCE COMPANY, | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| as successor to NORTHBROOK EXCESS | ) | |
| AND SURPLUS LINES INSURANCE | ) | |
| COMPANY, formerly known as | ) | |
| NORTHBROOK INSURANCE | ) | |
| COMPANY; CENTURY INDEMNITY | ) | |
| COMPANY, as successor to CIGNA | ) | |
| SPECIALTY INSURANCE COMPANY, | ) | |
| formerly known as CALIFORNIA UNION | ) | |
| INSURANCE COMPANY, and as | ) | |

successor to CCI INSURANCE )
COMPANY, as successor to INSURANCE )
COMPANY OF NORTH AMERICA; )
COLUMBIA CASUALTY COMPANY; )
CONTINENTAL CASUALTY )
COMPANY; THE CONTINENTAL )
INSURANCE COMPANY, for itself and )
as successor to HARBOR INSURANCE )
COMPANY; FEDERAL INSURANCE )
COMPANY; FIRST STATE )
INSURANCE COMPANY; FIREMAN'S )
FUND INSURANCE COMPANY; )
SATURN INSURANCE COMPANY )
LIMITED; TIG INSURANCE )
COMPANY, as successor to )
INTERNATIONAL SURPLUS LINES )
INSURANCE COMPANY; TRAVELERS )
CASUALTY AND SURETY COMPANY, )
formerly known as THE AETNA )
CASUALTY AND SURETY COMPANY; )
and ZURICH AMERICAN INSURANCE )
COMPANY, formerly known as ZURICH )
INSURANCE COMPANY, )
)
        Third-Party Defendants. )
_____)

---

**PLAINTIFF EATON CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION
TO THE MOTIONS TO DISMISS FILED BY DEFENDANTS FIREMAN'S FUND
INSURANCE COMPANY, INDEPENDENT SPECIALTY INSURANCE COMPANY,
AND TRAVELERS CASUALTY AND SURETY COMPANY**

---

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    PROCEDURAL HISTORY ........................................................................... 2

    A.    The Insurers' Pleadings Undercut Their No Actual Controversy Position ........... 2

    B.    The Insurers' Participation in This Action ............................................. 4

III.    FACTUAL HISTORY ................................................................................. 5

    A.    Claims History ..................................................................................... 5

    B.    The Insurers' Policies .......................................................................... 6

    C.    The Underlying Policies ....................................................................... 7

IV.    ARGUMENT ............................................................................................. 9

    A.    Standards for Justiciability ................................................................... 9

    B.    Eaton's Asbestos Claims Already Reach the Insurers' Attachment Points ........ 12

        1.    This Court Has Ruled that the All Sums Allocation Method Applies ........ 12

        2.    The Asbestos Claim Liabilities Already Reach Multiple Insurer Attachment Points ........ 13

        3.    Eaton May Establish Exhaustion of Underlying Limits by Evidence of Costs Incurred ........ 17

    C.    Even if the Asbestos Claims Have Not Already Reached All of the Insurers' Attachment Points, There Is a Practical Likelihood that They Will ........ 18

        1.    The Standards for "Practical Likelihood" ................................................. 18

        2.    Eaton's Claims Satisfy the "Practical Likelihood" Standard .................. 20

        3.    Cases From this and Other Circuits Are Instructive ............................... 22

V.    CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Associated Indem. Corp. v. Fairchild Ind., Inc.*,
    961 F.2d 32 (2d Cir. 1992)............................................................................10, 11, 18

*Bankers Trust Co. v. Old Republic Inc. Co.*,
    959 F.2d 677 (7th Cir. 1992) .................................................................9, 18, 22, 23

*Central States, Southeast and Southwest Areas Health and Welfare v. American
Int. Gr.*,
    840 F.3d 448 (7th Cir. 2016) ...............................................................................10, 18

*Century Indem. Co. v. Marine Grp., LLC*,
    848 F. Supp. 2d 1229 (D. Or. 2012), *order clarified on reconsideration,* No.
    3:08-CV-1375-AC, 2012 WL 13054703 (D. Or. Dec. 26, 2012)......................20, 24

*Clark Construction Grp., Inc. v. Eagle Amalgamated Service, Inc.*,
    2005 WL 946911 (W.D. Tenn. 2005)........................................................................25

*Cushman & Wakefield, Inc. v. Ill. Nat'l Ins. Co.*,
    No. 14 C 8725, 2015 WL 2259647 (N.D. Ill. May 11, 2015) ...........................10, 11

*Danaher Corp. v. Travelers Indemnity Co.*,
    414 F. Supp. 3d 436 (S.D.N.Y. 2019)........................................................................11

*DiCocco v. National General Ins. Co.*,
    140 P. 3d 314 (Co. App. Ct. 2006) ............................................................................10

*Eaton Corporation, et al. v. The Aetna Casualty and Surety Company, et al.*,
    (Civil Action No. 189068) ...........................................................................................8

*Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*,
    769 N.E.2d 835 (Ohio 2001) ......................................................................................12

*Int'l Harvester v. Deere & Co.*,
    623 F.2d 1207 (7th Cir. 1980) ....................................................................................14

*J.H. France Refractories Co. v. Allstate Ins. Co.*,
    626 A.2d 502 (Pa. 1993) .............................................................................................13

*Keene Corp. v. Ins. Co. of N. Am.*,
    667 F.2d 1034 (D.C. Cir. 1981)..................................................................................13

*Koppers Co. v. Aetna Cas. Sur. Co.*,
    98 F.3d 1440 (3d Cir. 1996)........................................................................................17

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
    312 U.S. 270 (1941)............................................................................................9, 19

*Md. Cas. Co. v. WR Grace & Co.*,
    No. 88 CIV. 2613.....................................................................................................11

*Molex Inc. v. Wyler*,
    334 F. Supp.2d 1083 (N.D. Ill. 2004) ....................................................................18

*Potter v. Davis*,
    No. 2:15cv266, 2015 WL 5247709 (E.D. Va. Aug. 31, 2015)................................24

*Seattle Times Co. v. Nat'l Sur. Corp.*,
    No. C13-1463RSL, 2016 WL 3033498 (W.D. Wash. May 27, 2016) ........19, 20, 24

*Super Products Corp. v. D P Way Corp.*,
    546 F.2d 748 (7th Cir. 1976) ...................................................................................14

*Tocci Building Corp. of New Jersey, Inc. v. Virginia Surety Co.*,
    750 F. Supp. 2d 316 (D. Mass. 2010) ................................................10, 11, 20, 23

*Trinity Homes LLC v. Ohio Cas. Ins. Co.*,
    629 F.3d 653 (7th Cir. 2010) ..............................................................................17, 18

*UnitedHealth Grp., Inc. v. Lexington Ins. Co.*,
    No. Civ. 05-1289....................................................................................................20

*Zeig v. Mass. Bonding Ins. Co.*, 23 F.2d 665, 666 (2d Cir. 1928) ...............................17

**Statutes**

28 U.S.C. § 2201 .............................................................................................................1

Plaintiff Eaton Corporation submits this Memorandum of Law in Opposition to the Motion to Dismiss Eaton Corporation's Third Amended Complaint for Declaratory Judgment Relief, Breach of Contract and Damages filed by Third Party Defendant Fireman's Fund Insurance Company ("Fireman's Fund") and Defendant Independent Specialty Insurance Company (collectively, "FFIC") and the Motion to Dismiss Eaton Corporation's Amended Complaint Against Certain Third-Party Defendants filed by Third-Party Defendant Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Surety Company) ("Travelers") (FFIC and Travelers are collectively referred to herein as the "Insurers").[1] Eaton respectfully requests the Court to deny the Insurers' Motion. In the alternative, Eaton requests that the Court grant Eaton leave to amend its Third Amended Complaint and Amended Complaint against Third-Party Defendants to include more specific allegations relating to exhaustion of the underlying policies.

## I.     **INTRODUCTION**

Waiting until over two years after they were first sued in this action, the Insurers[2] have now each filed motions to dismiss asserting that Eaton's claims against them do not present an "actual controversy" under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Insurers' motions are predicated on (i) the false legal principle that a policyholder may not bring a declaratory judgment action against an excess insurer unless the underlying insurance coverage has been exhausted; and (ii) the false factual premise that Eaton has not exhausted the coverage underlying the Insurers' policies here. To support their motions, the Insurers have:

---

[1] FFIC and Travelers assert essentially identical legal arguments in support of their respective motions. Accordingly, Eaton responds to both motions with this one memorandum.

[2] Independent Specialty Insurance Company ("Independent Specialty") was first named in this action in March 2021, but is treated collectively with Fireman's Fund here because, according to their Corporate Disclosure Statement filed in this case, Fireman's Fund and Independent Specialty were previously related entities, and Independent Specialty's "policies at issue in this case are 100% reinsured by Fireman's Fund." (Doc. 316). They also have the same counsel.

- Made statements that are factually incorrect;

- Ignored this Court's rulings that the all sums allocation method is to be applied here;

- Given lip service to, but then failed to apply, the "practical likelihood" standard for determining whether an actual controversy exists; and

- Relied on inapposite cases arising from very different facts.

For these reasons and others set forth herein, the Court should deny the Insurers' motions.

## II.    PROCEDURAL HISTORY

In this action, Eaton asks the Court for, *inter alia*, a declaration of its coverage rights under various insurance policies, including those issued by the Insurers (the "Insurers' Policies"), with respect to asbestos bodily injury claims allegedly arising from exposure to products manufactured by Eaton and its predecessor, Cutler-Hammer, Inc. (the "CH Claims") (Eaton and Cutler-Hammer, Inc. are collectively referred to hereinafter as "Eaton.").

Before presenting evidence that conclusively establishes that the relevant liabilities have already reached the attachment points of multiple of the Insurers' Policies, Eaton submits below the procedural history of the case that shows: (i) an actual controversy exists between it and each of the Insurers; and (ii) the Insurers' actions since they were sued here acknowledge this fact.

### A.    The Insurers' Pleadings Undercut Their No Actual Controversy Position

Although the Insurers contend now, two years after they were sued, that no actual controversy exists, their pleadings establish otherwise.  Specifically, Eaton's Complaint against Certain Third-Party Defendants (("the Prior Complaint") (Doc. 173)) filed against Fireman's Fund and Travelers states:

> Eaton seeks a declaration that each of the [] Insurers is obligated to pay all sums relating to the defense and indemnity of any CH Claim that triggers one or more of its Policies.

(Doc. 293, ¶ 16).  In their Answers, the Insurers dispute that Eaton is entitled to this relief (Doc.

217 (Fireman's Fund), Answer to Allegation Nos. 14-15; Doc. 188 (Travelers), Answers to ¶¶ 14-15).

Further, Eaton alleges in its current Amended Complaint against Certain Third-Party Defendants that:

- The Insurers' Policies "insure, among other things, liability for bodily injury or death allegedly caused by exposure to asbestos-containing products" and that "Eaton is entitled to defense and indemnity coverage under the [Insurers' policies] with respect to each CH Claim up to the full amount of any applicable limits of the… [p]olicies and, when more than one [Insurer's policies] is responsible for a Claim, Eaton is entitled to select the [insurer] or [p]olicies under which it is to be indemnified and/or defended for that CH Claim." (Doc. 293, ¶¶ 26-27; *see also* Doc. 293, ¶¶ 34-39; Third Amended Complaint (filed against Independent Specialty), Doc. 292, ¶¶ 24-25, ¶¶ 38-43);[3] and

- The Insurers dispute these allegations regarding their obligations to provide coverage (Doc. 293, ¶¶ 30, 40; *see also* ¶¶ Doc. 292, ¶¶ 29, 44).

In their Answers to the Prior Complaint, the Insurers confirm that they dispute Eaton's allegations regarding their coverage obligations. (Doc. 217, Answer to Allegation Nos. 29, 39 ("FFIC admits only that it disputes various legal conclusions alleged by Eaton…"/"FFIC admits that it disputes various legal conclusions alleged in the foregoing requests for declaratory relief…"); Doc. 188, Answer to ¶¶ 29, 39 ("Travelers admits the allegations of Paragraph [29/39] [that Travelers disputes coverage] as they pertain to Travelers…").

Finally, in their Answers to the Prior Complaint, the Insurers assert numerous Additional Defenses or Affirmative Defenses to Eaton's claims. Specifically, Fireman's Fund asserts 12

---

[3] Eaton's Third Amended Complaint (Doc. 292) and Amended Complaint against Certain Third-Party Defendants (Doc. 293) are collectively referred to herein as the "Operative Pleadings."

Affirmative Defenses (Doc. 217, at pp. 13-14); Travelers asserts 44 Additional Defenses (Doc. 188, at pp. 13-31).

In sum, the Insurers' multiple denials and affirmative defenses confirm that an actual controversy exists between Eaton and the Insurers.

### B.    The Insurers' Participation in This Action

Fireman's Fund and Travelers were added to this lawsuit in 2019.[4]  Since that time, and despite their newly minted position that the Court supposedly never had subject matter jurisdiction here, these insurers have actively participated in the litigation.  That participation has included filing Answers to – and not, until now, motions to dismiss -- the third-party complaint and Eaton's complaint; serving initial disclosure statements; serving written responses to both Phase I and Phase II interrogatories and requests for production of documents; participating in Phase II joint insurer discovery requests; receiving Eaton's responses to discovery requests; joining in motions for stay; participating in multiple mediation sessions; negotiating policy stipulations; and, in the case of Fireman's Fund, joining insurer opposition to Eaton's motion to substitute Eaton for First State.  *See* Docs. 170, 173, 188, 216, 217, 218, 240, 281, 287, 316; *see also* Declaration of Paul E. Del Vecchio in Support of Plaintiff Eaton Corporation's Opposition to Motions to Dismiss ("Del Vecchio Dec."), ¶¶ 2-20, Exs. 1-17 (submitted herewith).  Thus, the Insurers waited over two years and engaged in significant litigation activities[5] before asserting

---

[4]  The Resolute and Riverstone insurers sued Fireman's Fund and Travelers in their Third-Party Complaint on March 4, 2019 (Doc. 145).  Eaton then sued Fireman's Fund and Travelers in its own Complaint against Certain Third-Party Defendants on April 8, 2019 (Doc. 173).  Even though the allegations against them have remained constant since the 2019 pleadings, neither of the Insurers ever sought dismissal of the complaints against them until now.

[5]  Eaton sued the Insurers in a similar asbestos coverage action in the Court of Common Pleas, Cuyahoga County, Ohio in 2013 captioned *Eaton Corporation, et al. v. Allstate Insurance Company, et al.* (Case No. CV-13-802476) (the "Ohio Action") (Del Vecchio Dec., ¶ 22, Ex. 18).  Although the same policies, with the same attachment points, are involved in that action, neither Insurer has ever moved to dismiss the Ohio claims.

that the Court supposedly has no jurisdiction over them.

This history presents a clear window into the Insurers' actual belief regarding whether the coverage claims against them are justiciable.

### III. FACTUAL HISTORY

#### A. Claims History

Eaton seeks a declaration of rights to coverage for CH Claims in this action. However, other product liability claims are also relevant to establish exhaustion of the applicable aggregate limits of liability in the policies underlying the Insurers' Policies.[6] All of these policies apply generally to product liability claims, including, but not limited to: (i) the CH Claims; (ii) non-asbestos product liability claims;[7] and (iii) asbestos product liability claims in which the claimants allege continuous or progressive bodily injury arising from exposure to asbestos contained in products of Eaton and/or its predecessors Eaton Manufacturing Company and Eaton Yale & Towne, Inc. (the "EAB Claims") (together with the CH Claims, the "Asbestos Claims").

Contrary to the Insurers' assertions here, Eaton does not concede in its pleadings or otherwise that it has not incurred sufficient liabilities that, when allocated to a particular policy year, exhaust the applicable underlying limits of liability. Indeed, and as established by, *inter alia*, the Affidavit of Charles D. Price in Opposition to Insurers' Motions to Dismiss ("Price Aff"), submitted with this Memorandum:

---

[6] The terms of the Insurers' Policies afford broad coverage for all sums that Eaton is legally obligated to pay in settlement or satisfaction of any claims that trigger their policies in excess of the applicable underlying limits of liability (Doc. 312, Travelers' Memo., pp. 2-3; Doc. 307, FFIC's Memo., p. 3).

[7] Eaton does not submit evidence of its liability for non-asbestos product liability claims here because much of that evidence is contained in voluminous hard copy documents and, given the overwhelming evidence of underlying exhaustion due to the Asbestos Claims, it is not necessary to burden the Court with such additional evidence.

-5-

- Eaton has been sued in Asbestos Claims since at least the late 1980s, with new Asbestos Claims filed in every calendar year since at least 1988 (Price Aff, ¶ 6);

- In each calendar year from 2016 through 2020 alone, Eaton was named in more than 1,300 new Asbestos Claims (Price Aff, ¶ 7);

- As of February 28, 2021, there were at least 7,300 Asbestos Claims pending against Eaton (Price Aff, ¶ 8);

- Between 2016 and 2020 alone, Eaton and its insurers paid over $100 million in indemnity and defense costs in connection with Asbestos Claims that allege first exposure to asbestos prior to January 1, 1985 (Price Aff, ¶ 9);

- As of February 28, 2021, Eaton and its insurers paid at least $200 million in defense and indemnity costs for Asbestos Claims (Price Aff, ¶ 10);[8]

- Of the Asbestos Claims that allege when the claimant was exposed to asbestos, virtually every Claim (over 99% of CH Claims and over 98% of EAB Claims) alleges exposure to Cutler-Hammer or Eaton products prior to 1979 (Price Aff, ¶ 11). These Claims, therefore, trigger the years of the Insurers' Policies; and

- Eaton expects that it will continue to be named in Asbestos Claims and that it will continue to incur defense and indemnity costs in connection with such Claims in the future (Price Aff, ¶ 12).

**B.      The Insurers' Policies**

The Insurers' Policies attach when the applicable underlying limits of liability are exhausted by payment of claims and/or when Eaton has incurred liabilities that, when allocated to a particular policy year, are sufficient to exhaust those underlying limits. Specifically, the Travelers Policies require it to indemnify Eaton against "EXCESS NET LOSS," which is defined

---

[8] This total, which is drawn from the KCIC Database, likely understates the past costs, some of which are contained in the hard copy documents that Eaton maintains (Price Aff, ¶ 4).

as "that part of the total of all sums which the INSURED becomes legally obligated to pay or has paid, as damages … in excess of the total of the applicable limits of liability of all policies described in Section 3. Schedule of Underlying Insurance; whether or not such policies are in force." (Doc. 312, Travelers' Memo., pp. 2-3). Similarly, the FFIC Policies require FFIC to pay "Ultimate Net Loss" up to the applicable limit of liability "in excess of the limit or limits of liability of the applicable underlying insurance policy or policies." (Doc. 307, FFIC's Memo., p. 3). Although the FFIC Policies state that "the insurance afforded under this policy shall apply only after all underlying insurance has been exhausted," none of either Insurers' Policies specifies that the underlying insurance must be "exhausted" only by the underlying insurers' payment of the full underlying limits. (Doc. 312, Travelers' Memo., pp. 2-3; Doc. 307, FFIC's Memo., p. 3).

Eaton agrees that the Insurers' Policies attach at the following levels:

| Insurer | Policy No. | Policy Period | Limit of Liability | Attachment Point |
|---------|-----------|---------------|--------------------|------------------|
| Travelers | 02XN41WCA | 1/1/80-1/1/81 | $10,000,000 | $50,000,000 + primary |
| Travelers | 02XN42WCA | 1/1/80-1/1/81 | $15,000,000 | $100,000,000 + primary |
| Travelers | 02XN51WCA | 1/1/81-1/1/82 | $25,000,000 | $150,000,000 + primary |
| Travelers | 02XN55WCA | 1/1/82-1/1/83 | $25,000,000 | $150,000,000 + primary |
| FFIC | XLX-121 86 70 | 1/1/79-1/1/80 | $5,000,000 | $45,000,000 + primary |
| FFIC | XLX-121 86 96 | 1/1/80-1/1/81 | $10,000,000 | $50,000,000 + primary |
| FFIC | XLX-121 90 45 | 1/1/81-1/1/82 | $15,000,000 | $150,000,000 + primary |
| FFIC | XLX-121 85 27 | 1/1/82-1/1/83 | $15,000,000 | $150,000,000 + primary |
| FFIC | XLX-153 31 88 | 1/1/83-1/1/84 | $25,000,000 | $200,000,000 + primary |
| FFIC | XLX-153 49 32 | 1/1/84-1/1/85 | $30,000,000 | $200,000,000 + primary |
| FFIC | XLX-173 45 63 | 1/1/85-1/1/86 | $25,000,000 | $100,000,000 + primary |

## C. **The Underlying Policies**

During the period of the Insurers' Policies, Continental Insurance Company ("Continental") issued all the primary policies and all of the umbrella policies that are directly excess of those primary policies. Above the Continental umbrella policies are various other policies identified in Eaton's pleadings and the Insurers' Motions. It is undisputed that all of

these policies contain aggregate limits of liability applicable to product liability claims like the Asbestos Claims. The aggregate limits of liability applicable to product liability claims in all of the Continental primary and umbrella policies were exhausted years ago:

- By Order dated August 12, 1994, the Court of Common Pleas, Cuyahoga County, Ohio issued an Order in *Eaton Corporation, et al. v. The Aetna Casualty and Surety Company, et al.* (Civil Action No. 189068) ruled that, as of March 31, 1994, most of the Continental primary and umbrella policies were already exhausted or partially exhausted as follows:

| Insurer | Policy No. | Policy Period | Layer | Limits Remaining as of 3/31/1994 |
|---------|-----------|---------------|-------|----------------------------------|
| Continental | SRL3636800 | 1/1/79–1/1/80 | Primary | Exhausted |
| Continental | SRL3632840 | 1/1/80–1/1/81 | Primary | Exhausted |
| Continental | SRL3632902 | 1/1/81–1/1/82 | Primary | Exhausted |
| Continental | SRL3632951 | 1/1/82–1/1/83 | Primary | $539,049 |
| Continental | SRL3632988 | 1/1/83–1/1/84 | Primary | Exhausted |
| Continental | SRL3633017 | 1/1/84–1/1/85 | Primary | $887,210 |
| Continental | Lx267921 | 1/1/79–1/1/80 | Umbrella | $6,879,792 |
| | | 1/1/80–1/1/81 | Umbrella | $6,665,736 |
| Continental | SRU2153453 | 1/1/81–1/1/82 | Umbrella | $9,217,363 |

(Del Vecchio Dec., ¶ 23, Ex. 19).[9]

- On May 31, 2015, Continental sent a letter to Eaton stating that all of the primary and umbrella policies that it issued to Eaton were exhausted (Del Vecchio Dec., ¶ 24, Ex. 20);

- In its pleadings, Eaton asserted claims under the policies underlying the Insurers' Policies against those insurers that had not yet honored their coverage obligations.

---

[9] The Court of Common Pleas, Cuyahoga County, Ohio issued the Order in *Eaton Corporation, et al. v. The Aetna Casualty and Surety Company, et al.* (Civil Action No. 189068). FFIC and Travelers were parties to that action when the Order was issued, so the Order is binding on them here.

However, those claims do not establish (as Insurers contend) that Eaton's Asbestos Claim liabilities do not or could not reach the Insurers' attachment points; and

- Shortly after filing those pleadings, Eaton resolved its claims against numerous insurers, and those claims were recently dismissed (Doc. 321). Only the Insurers and one other insurer have not yet honored their coverage obligations (see Doc. 317).

In summary, for more than three decades, Eaton has been sued consistently in Asbestos Claims and incurred over $200 million in defense and indemnity costs. Nearly half the past costs – over $100 million – were incurred in the last five years (from 2016 to 2020). These costs incurred in the last five years alone, when added to prior exhaustion of underlying limits, are greater than the underlying limits of five of the Insurers' Policies, as described in further detail below. In addition, Eaton expects to be sued and to incur costs in defending and resolving Asbestos Claims in the future.

## IV. ARGUMENT

### A. Standards for Justiciability

The Insurers assert that the Declaratory Judgment Act requires that an actual controversy exists between parties for a court to have subject matter jurisdiction and that the controversy must (i) be definite and concrete, touching the legal relations of parties having adverse legal interests; (ii) admit of specific relief, as opposed to seeking an advisory opinion; (iii) be of sufficient immediacy to warrant declaratory relief; and (iv) be ripe.

Eaton agrees with the Insurers on every one of these principles. By the same token, the Insurers must agree with Eaton that, in deciding whether those principles are satisfied in a particular situation, the courts have made clear that:

- "Article III requires only a probabilistic injury." *Bankers Trust Co. v. Old Republic Inc. Co.*, 959 F.2d 677, 681 (7th Cir. 1992);

- Whether a probabilistic injury is sufficient to state a claim is a "matter of degree." *Bankers Trust*, 959 F.2d at 681 (7th Cir. 1992). *See also Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (whether an actual controversy exists under the Declaratory Judgment Act "is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy"); *Central States, Southeast and Southwest Areas Health and Welfare v. American Int. Gr.*, 840 F.3d 448, 451 (7th Cir. 2016);

- Where (as here) declaratory relief, rather than actual damages, is sought against an excess insurer, "'absolute proof that an excess insurer's policies will be triggered is by no means required in order to establish a ripe controversy.'" *Tocci Building Corp. of New Jersey, Inc. v. Virginia Surety Co.*, 750 F. Supp. 2d 316, 322 (D. Mass. 2010), *quoting Hoechst Celanese Corp. v. Liberty Mut. Ins. Co.*, No. Civ. A. 90-4369, 1999 WL 20522 at *2 (Mass. Super. Ct. Nov. 24, 1998). *See also DiCocco v. National General Ins. Co.*, 140 P. 3d 314, 316 (Co. App. Ct. 2006) ("it is not necessary to provide absolute proof that [the] excess insurer's policies will be triggered in order to establish an actual controversy ripe for adjudication.");

- The fact that the excess insurer's "liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action." *Associated Indem. Corp. v. Fairchild Ind., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992); *Tocci*, 750 F. Supp. 2d at 321 (D. Mass. 2010) ("Courts have similarly held, "[i]n the context of excess insurance policies, that the liability of an excess insurer is contingent does not *per se* defeat jurisdiction over a declaratory judgment."" (*quoting UnitedHealth Grp., Inc. v. Lexington Ins. Co.*, No. Civ. 05-1289 DSDSRN, 2006 WL 695523, at *3 (D. Minn.

Mar. 17, 2006)); *Cushman & Wakefield, Inc. v. Ill. Nat'l Ins. Co.*, No. 14 C 8725, 2015 WL 2259647, *4 (N.D. Ill. May 11, 2015);

- In fact, "litigation over insurance coverage has become the paradigm for asserting jurisdiction despite 'future contingencies that will determine whether a controversy ever actually becomes real.'" *Associated Indem. Corp.*, 961 F.2d at 35 (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2757 (2d. ed. 1983 at 586; *Tocci*, 750 F. Supp. 2d at 321; *Cushman & Wakefield* at *4;

- "In determining whether a declaratory judgment action involving an excess insurer is ripe, 'courts should focus on "***the practical likelihood that the contingencies will occur.***"' *Tocci*, 750 F. Supp.2d at 321, *quoting Associated Indem.*, 961 F.2d at 35, *quoting* Wright, Miller & Kane, *supra*, at 587. *See also Danaher Corp. v. Travelers Indemnity Co.*, 414 F. Supp. 3d 436, 466-70 (S.D.N.Y. 2019); *Cushman & Wakefield* at *4 (emphasis added); and

- "In undertaking the 'practical likelihood' analysis, courts have often compared the amount claimed against the insured to the attachment point of the relevant excess insurance as a method for determining whether there is a 'reasonable likelihood that the claims will mature as to that [excess insurer].'" *Tocci*, 750 F. Supp.2d at 322, *quoting Raytheon Co. v. Cont'l Cas. Co.*, 123 F.Supp.2d 22, 30 (D. Mass. 2000). *See also Md. Cas. Co. v. WR Grace & Co.*, No. 88 CIV. 2613, WL 306372, at *3 (S.D.N.Y. June 7, 1996).

Thus, the principles that control the Insurers' motions are clear and beyond disagreement. Where Eaton and the Insurers disagree is whether Eaton's claims for declaratory relief against the Insurers satisfy these principles. However, as discussed below, the evidence is that (i) Eaton's Asbestos Claims have already reached the attachment points of several of the

Insurers' Policies, eliminating any possible argument that no actual controversy exists; and (ii) there is a practical likelihood that the Asbestos Claims already have reached the attachment points of the other Insurers' Policies or soon will.

**B.**     **Eaton's Asbestos Claims Already Reach the Insurers' Attachment Points**

    **1.**     **This Court Has Ruled that the All Sums Allocation Method Applies**

In determining whether costs incurred from liabilities arising over a period of years, like the CH Claims, have reached an excess policy's attachment point, a court must first determine what allocation method is to be applied. This Court has already done so.

Specifically, on September 27, 2018, this Court granted Eaton's motion for partial summary judgment against Westport Insurance Company and ruled, *inter alia*, that the liabilities arising from the CH Claims are to be allocated on an all sums basis (Doc. 118, at 13). Similarly, on June 10, 2019, this Court granted Eaton's motion for partial summary judgment against defendants AIU Insurance Company, Granite State Insurance Company, New Hampshire Insurance Company, and North River Insurance Company, again ruling that the all sums allocation method applies to the CH Claims (Doc. 229, at 12-13). In doing so, the Court, citing *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 315 Wis.2d 556, 583–85 (2009), stated, "Wisconsin has adopted . . . the 'all sums' allocation method." (Doc. 229, at 5). That is now and has long been the law of the case.

Under the all sums allocation method and this Court's prior rulings, each policy triggered by an Asbestos Claim is "independently liable in full for all sums arising from the Claim, subject to the policy's limits of liability." (Doc. 229, at 13). Thus, Eaton may select any triggered policy year and seek full coverage from each independently liable policy in that year up to its applicable

limit of liability.[10]  This differentiates the all sums approach from the pro rata allocation method, rejected by this Court in its prior rulings, which purportedly would require the policyholder to spread its liabilities across all the triggered policy years.

Thus, Eaton has the right to select, for example, the 1979 policy year, where FFIC's lowest attachment point is $45 million in excess of the exhausted primary policy.  Then, so long as Eaton's Asbestos Claims liabilities total at least $45 million, those liabilities will reach this policy.  Similarly, Eaton also has the right to select, for example, the 1980 policy year, where the Insurers both issued policies with attachment points at $50 million in excess of the exhausted primary policy.  Then, so long as Eaton's Asbestos Claims liabilities total at least $50 million, those liabilities will reach both Insurers' Policies in that layer.  Under these circumstances, neither Insurer would have any argument that no justiciable controversy exists or that Eaton's declaratory judgment claims against them are not yet ripe.

As discussed below, those are precisely the circumstances that exist now.  Eaton's Asbestos Claim liabilities are more than sufficient to reach the Insurers' attachment points in multiple policies.

### 2. The Asbestos Claim Liabilities Already Reach Multiple Insurer Attachment Points

The Insurers incorrectly assert, without citation to any supporting facts or allegations, that Eaton concedes that it has not exhausted the underlying coverage.  First, Eaton has made no such

---

[10]  Numerous courts applying the all sums approach have stated that the policyholder is entitled to select the policy year or years from which to seek full coverage, up to the applicable limits of liability.  *See, e.g., Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.,* 769 N.E.2d 835, 841 (Ohio 2001) ("Goodyear should be permitted to choose, from the pool of triggered primary policies, a single primary policy against which it desires to make a claim. In the event that this policy does not cover Goodyear's entire claim, then Goodyear may pursue coverage under other primary or excess insurance policies"); *J.H. France Refractories Co. v. Allstate Ins. Co.,* 626 A.2d 502, 508 (Pa. 1993) ("[the policyholder] should be free to select the policy or policies under which it is to be indemnified"); *Keene Corp. v. Ins. Co. of N. Am.,* 667 F.2d 1034, 1049-50 (D.C. Cir. 1981) ("[The policy holder] may select the policy under which it is to be indemnified").

concession.  Second, for the reasons discussed below, Eaton does not have to show that it has resolved its claims against the underlying insurers[11] or exhausted all the underlying coverage to state a justiciable claim for declaratory judgment.  Third, Eaton, in fact, has incurred more than enough defense and indemnity costs to exhaust the applicable underlying limits to reach at least five of the Insurers' Policies.

As the Insurers agree, the Court may look beyond the complaint and consider evidence to determine whether a controversy exists.[12] *Int'l Harvester v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980).  The plaintiff bears the burden of supporting the jurisdictional allegations of the complaint with competent proof of the facts as of the filing of the complaint.  *Id.*; *Super Products Corp. v. D P Way Corp.*, 546 F.2d 748, 752 (7th Cir. 1976).  As FFIC notes in its memorandum, Eaton may demonstrate ripeness based on its claim that FFIC must indemnify it for defense costs, judgments, and settlements (Doc. 307, FFIC Memo., p. 11).

The Insurers base their motions on their assumption that their attachment points have not been and will never be reached.  In fact, in the last five full years before Eaton filed its pleadings (2016 through 2020), Eaton paid over $100,000,000 in defense and indemnity costs on the

---

[11]  Even if that were the standard (it is not), Eaton would have satisfied it when it resolved and dismissed its claims against Third-Party Defendants Allstate Insurance Company, solely as successor in interest to Northbrook Excess and Surplus Insurance Company, formerly known as Northbrook Insurance Company, Century Indemnity Company, as successor-in-interest to CIGNA Specialty Insurance Company, formerly known as California Union Insurance Company and as successor to CCI Insurance Company, as successor to Insurance Company of North America, Federal Insurance Company, and TIG Insurance Company (as successor by mergers to International Insurance Company and International Surplus Lines Insurance Company) and Defendants/Third-Party Plaintiffs AIU Insurance Company, Granite State Insurance Company, New Hampshire Insurance Company, and North River Insurance Company.

[12]  The Insurers do not confine their purported support for their motions to the pleadings, citing instead to evidence, including policy stipulations, Eaton's 10-K filings, settlement and exhaustion agreements between Eaton and multiple insurers, and positions taken in the Ohio Action.

Asbestos Claims (Price Aff, ¶ 9).[13]  These amounts do not include the tens of millions incurred

before 2016 or after 2020.  Thus, focusing solely on this five-year period, costs incurred on

claims covered under the policies underlying the Insurers' Policies are more than sufficient to

exhaust those underlying limits and reach the Insurers' Policies in multiple years:[14]

| Insurer | Policy No. | Policy Period | Limit of Liability | Attachment Point |
|---------|-----------|---------------|---------------------|------------------|
| FFIC | XLX-121 86 70 | 1/1/79-1/1/80 | $5,000,000 | $45,000,000 + primary |
| FFIC | XLX-121 86 96 | 1/1/80-1/1/81 | $10,000,000 | $50,000,000 + primary |
| Travelers | 02XN41WCA | 1/1/80-1/1/81 | $10,000,000 | $50,000,000 + primary |
| Travelers | 02XN42WCA | 1/1/80-1/1/81 | $15,000,000 | $100,000,000 + primary |
| FFIC | XLX-173 45 63 | 1/1/85-1/1/86 | $25,000,000 | $100,000,000 + primary |

For example, in the 1980 policy year, the Insurers each issued policies with limits of

$10,000,000 each that attach at "$50,000,000 + Primary" (Doc. 307, FFIC's Memo., p. 2; Doc.

312, Travelers' Memo., p. 2).[15]  The 1994 Ohio Order establishes that, as of March 31, 1994, the

1980 primary policy was exhausted and the $10,000,000 umbrella policy immediately excess of

the primary was partially exhausted with only $6,665,736 remaining (Del Vecchio Dec., ¶ 23,

Ex. 19).  Hence, as of March 31, 1994, the unexhausted limits underlying the Insurers' 1980

policies totaled $41,665,736.  The chart below illustrates this:

| Underlying Insurer | Policy No. | Policy Period | Underlying Aggregate Limits | Layer | Limits Remaining as of 3/31/1994 |
|--------------------|-----------|---------------|------------------------------|-------|----------------------------------|
| Continental | SRL3632840 | 1/1/80-1/1/81 | $1,000,000 | Primary | Exhausted |
| Continental | LX2679211 | 1/1/80-1/1/81 | $10,000,000 | Umbrella | $6,665,736 |
| North River | JU0783 | 1/1/80-1/1/81 | $10,000,000 | 1st XS above umbrella | $10,000,000 |
| Saturn | 39012 | 1/1/80-1/1/81 | $5,000,000 | umbrella po | $5,000,000 |

[13]  These amounts do not include costs incurred for the small number of claims that allege first exposure to asbestos on or after January 1, 1985.

[14]  Eaton has not yet selected the policy year or years from which to seek coverage from the Insurers, nor is it required to do so at this juncture.

[15]  Travelers also issued a higher-level excess policy in the 1980 policy year that attaches at $100 million + primary.

| | | | | $15M | |
|---|---|---|---|---|---|
| North River | JU0784 | 1/1/80-1/1/81 | $25,000,000 | 2nd XS above umbrella | $25,000,000 |
| **Total:** | | | **$50,000,000+ Primary** | | **$41,665,736** |

Clearly, since Eaton paid over **$100,000,000 in defense and indemnity costs over the 2016-2020 period** (Price Aff, ¶ 9), the amounts already spent on Asbestos Claims are more than sufficient to reach the Insurers' Policies that attach at "$50,000,000 + Primary." In addition, the past costs incurred from 2016 to 2020 would also be sufficient to reach the higher-level Travelers excess policy no. 02XN42WCA in the 1980 policy year that attaches at "$100,000,000 + Primary." This illustration does not even account for the fact that the Continental umbrella policies, including the 1980 Continental umbrella policy, were exhausted years ago (Del Vecchio Dec., ¶ 24, Ex. 20).

The same analysis applies to the 1979 FFIC policy (no. XLX-121 86 70), which attaches at "$45,000,000 + Primary." By 1994, the 1979 Continental primary policy already was exhausted and the 1979 Continental umbrella policy was partially exhausted, with only $6,879,792 remaining in limits (Del Vecchio Dec., ¶ 23, Ex. 19). If Eaton selected the 1979 policy year to cover its Asbestos Claim liabilities, $100,000,000 in past costs incurred in the 2016-2020 would more than exhaust the applicable underlying limits and reach FFIC's attachment point.

Alternatively, if Eaton selected the 1985 policy year and targeted FFIC policy no. XLX-173 45 63, which attaches at "$100,000,000 + Primary," the past costs would also be sufficient to reach that attachment point because: (i) the 1985 Continental primary policy was exhausted by March 31, 2015 (Del Vecchio Dec., ¶ 24, Ex. 20); and (ii) Eaton incurred over $100,000,000 in defense and indemnity costs on Asbestos Claims in the 2016-2020 period alone (Price Aff, ¶ 9).

Thus, Eaton's 2016-2020 past costs alone, when allocated to the relevant policy years, would be more than enough to reach at least five of the Insurers' Policies. The remaining Insurer Policies are addressed in Section IV.C.2, below.[16]

### 3. Eaton May Establish Exhaustion of Underlying Limits by Evidence of Costs Incurred

As set forth in Section III.B, the Insurers' Policies attach when Eaton becomes legally obligated to pay, or has paid, as damages amounts in excess of the applicable underlying limits of liability. (Doc. 312, Travelers' Memo., pp. 2-3; Doc. 307, FFIC's Memo., p. 3). The Insurers' Policies do not require that the underlying insurance be "exhausted" only by the underlying insurers' payment of the full underlying limits. *Id*.

The Seventh Circuit Court of Appeals has recognized the distinction between (i) policies that attach when the underlying policies are exhausted and (ii) policies that clearly state that coverage is not triggered absent payment of the full underlying limits **by the underlying insurer**. *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 658-659 (7th Cir. 2010). Finding a dearth of Indiana law directly on point, the *Trinity* court cited to sister circuits' holdings that underlying insurers need not actually pay their full limits for the excess policy to attach; on the contrary, underlying insurance can be exhausted when the underlying insurer pays a portion of the total limit under a settlement and the insured takes responsibility for the remainder. *Id. at 659*, *citing Zeig v. Mass. Bonding Ins. Co.*, 23 F.2d 665, 666 (2d Cir. 1928) (insurer "had no rational interest in whether the insured *collected* the full amount of the primary policies, so long as it was only called upon to pay such portion of the loss as was in excess of the limits of those policies"); *Koppers Co. v. Aetna Cas. Sur. Co.*, 98 F.3d 1440, 1454 (3d Cir. 1996)

---

[16] Eaton does not argue here that its past costs, which exceed $200 million, reach all of the Insurers' attachment points because the extent to which those costs are reflected in the 1994 Order on prior exhaustion it is not yet clear. However, it is not necessary under the "practical likelihood" standard discussed below for Eaton to prove that all of the Insurers' attachment points have already been reached to establish justiciability.

("settlement with the primary insurer functionally 'exhausts' primary coverage and therefore triggers the excess policy"). In *Trinity*, the excess policy attached on after "the limits of 'underlying insurance' have been exhausted by payment of claims." *Id.* at 658. The Seventh Circuit distinguished such language from policies requiring "payment by the 'applicable insurers' before coverage was triggered" or attaching only after "the insurers under each of the Underlying policies have paid or have been held liable to pay the full amount of the Underlying Limit." *Id.* at 659 (citations omitted).

Thus, Eaton need not establish that the underlying insurers actually paid their full limits for the Insurers' Policies to attach.

\*     \*     \*

The evidence set forth above makes clear that the liabilities arising from the Asbestos Claims are already sufficient to exhaust the limits underlying at least five of the Insurers' Policies. Thus, no serious argument can be made that an actual controversy does not exist here.

**C.** **Even if the Asbestos Claims Have Not Already Reached All of the Insurers' Attachment Points, There Is a Practical Likelihood that They Will**

**1.** **The Standards for "Practical Likelihood"**

The fact that Eaton's past costs already reach multiple Insurer Policies should end all debate about whether there is a justiciable controversy. Even if that were not the case, the Insurers' motions still fail based on settled Seventh Circuit law, which the Insurers inexplicably ignore. The Insurers argue that a declaratory judgment claim against an excess insurer is not justiciable until the policies of the underlying carriers have been actually exhausted. However, that is not the rule in the Seventh Circuit. To the contrary, as even the Insurers are compelled to admit (Doc. 307, FFIC's Memo., p. 11), in this Circuit and others, a declaratory judgment claim against an excess insurer is justiciable in the absence of underlying exhaustion if there is a

"practical likelihood" that the liabilities at issue will reach the excess insurer's attachment point at some later date. *See, e.g., Associated Indem.*, 961 F.2d at 35; *Cushman & Wakefield at *4.*

Further, as Judge Posner has stated, "Article III requires only a probabilistic injury" and "[w]e are dealing with matters of degree." *Bankers Trust,* 959 F.2d at 681. *See also Central States, Southeast*, 840 F.3d at 451 ("The question is 'necessarily one of degree . . .'"), *quoting Md. Cas. Co.,* 312 U.S. at 273; s*ee also Molex Inc. v. Wyler*, 334 F. Supp.2d 1083, 1087 (N.D. Ill. 2004) ("whether a probabilistic injury is sufficient to state a claim is a 'matter of degree.'"). As stated by the Supreme Court in *Md. Cas. Co.*, 312 U.S. at 273: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[17]

In addition, Travelers argues that, because Eaton has not asserted a breach of contract claim against it (which Travelers characterizes as "yet another concession" by Eaton), Eaton's claims against Travelers are not ripe and may well never ripen (Doc. 312, Travelers Memo, p. 10). If Travelers' position -- that without a breach of contract claim, a request for declaratory

---

[17] FFIC contends that it will not be a hardship on Eaton if this Court declines jurisdiction because Eaton has settled with a number of its other insurers and because "Eaton has continually reported in Annual Reports filed with the U.S. Securities Exchange Commission that asbestos claims, including the CH Claims, 'will not have a material adverse effect on [its] consolidated financial statement[s]. . . '" (Doc. 307, FFIC Memo, pp. 14-15). However, Eaton's settlements with other insurers do not relieve FFIC of its contractual obligations to Eaton when the attachment points of its policies are reached. Further, FFIC's argument regarding Eaton's securities disclosures is a complete non-sequitur. Whether or not asbestos losses, net of insurance recovery, will have a material adverse impact on Eaton's consolidated financial statements under accounting and securities law standards is completely irrelevant to whether a justiciable controversy exists here. Finally, if the Court declines jurisdiction and dismisses this case, it will cause a hardship for Eaton. Eaton has litigated and mediated this matter since 2015, incurring significant costs in prosecuting the case and obtaining rulings from the Court. If the Insurers are dismissed, Eaton's recourse will be to file subsequent litigation against only them. The result would be expensive, inefficient piecemeal litigation that wastes the resources of both the litigants and the courts.

relief is not ripe -- were accepted, it would undercut the Declaratory Judgment Act's very "purpose of enabling the early and comprehensive resolution of disputes." *See Seattle Times Co. v. Nat'l Sur. Corp.*, No. C13-1463RSL, 2016 WL 3033498, at *3 (W.D. Wash. May 27, 2016). To find that the lack of a breach of contract claim is indicia that a declaratory judgment claim is not ripe in the context of insurance coverage would make relief under the Act illusory. Multiple courts have held that, while a policyholder's breach of contract claim against an excess insurer was not ripe, the policyholder's request for a declaratory judgment against the excess insurer presented an actual case and controversy that warranted the court's exercise of its discretion to entertain declaratory relief. *See, e.g.*, *Seattle Times*, No. C13-1463RSL, 2016 WL 3033498; *Century Indem. Co. v. Marine Grp., LLC*, 848 F. Supp. 2d 1229 (D. Or. 2012), *order clarified on reconsideration,* No. 3:08-CV-1375-AC, 2012 WL 13054703 (D. Or. Dec. 26, 2012).

### 2.    Eaton's Claims Satisfy the "Practical Likelihood" Standard

Eaton's claims against the Insurers easily satisfy the "practical likelihood" standard and the factors that the courts have considered in applying it. As the pleadings demonstrate, there is clearly a substantial controversy between parties having adverse legal interests because Eaton contends that the Insurers' Policies cover the CH Claims when those policies' attachment points are reached, and the Insurers deny such obligations and have asserted scores of affirmative defenses to contest Eaton's claims. As the evidence discussed above establishes, that controversy is immediate – past costs already exceed the attachment points of at least five of the Insurers' Policies.[18] In addition, the Insurers cannot dispute the likelihood of liability in the

---

[18] FFIC asserts that Eaton may demonstrate ripeness based on its claim that FFIC must provide coverage for defense costs, judgments, and settlements (Doc. 307, FFIC Memo., p. 11). However, even if the Insurers contend that Eaton's defense costs cannot be used to exhaust the Insurers' policies or those underlying them, any dispute as to whether defense costs apply against the underlying limits will have to be decided at a later stage of the litigation. "Courts have

-20-

underlying litigation given that Eaton already has paid hundreds of millions of dollars for the Asbestos Claims.

The indisputable facts are that Eaton has been sued in Asbestos Claims for over 30 years (Price Aff, ¶ 6). There were over 7,300 Asbestos Claims pending when Eaton filed the March 19, 2021 pleadings (Price Aff, ¶ 8). In the last five years alone, Eaton has spent over $100,000,000 in defense and indemnity costs (Price Aff, ¶ 9). Moreover, taking account of claims outside the 2016-2020 period, Eaton and its insurers paid over $200,000,000 in defense and indemnity costs on the Asbestos Claims prior to the filing of its March 19, 2021 pleadings (Price Aff, ¶ 10). The attachment points of the highest Insurer Policies are "$200,000,000 + Primary." Even assuming that a combination of prior exhaustion and total past costs have not already reached the highest of the Insurers' Policies, the practical likelihood is that they will.

This is not a case in which, for example, there is some doubt regarding whether an underlying claim will actually be asserted, nor is this a case in which the range of underlying liabilities is expected to be below the Insurers' attachment points. To the contrary, thousands of Asbestos Claims were pending just prior to Eaton's filing of the March pleadings and the Insurers' attachment points on at least five of their Policies already have been reached by past costs. Here, the Insurers do not and cannot point to any evidence suggesting that there is an end in sight for the asbestos litigation in the United States generally or for the Eaton Asbestos Claims, which Eaton has been defending since the 1980s, or that the indemnity and defense costs associated with them will somehow magically stop accruing. These facts alone distinguish Eaton's declaratory judgment claims against the Insurers from the claims in the cases on which the Insurers rely.

---

refrained from making a detailed examination of the policy terms and exclusions when determining whether there is a 'practical likelihood' that the primary limit could be exceeded." *Tocci*, 750 F.Supp.2d at 323 (citing to *Bankers Trust*, 959 F.2d at 681). *See also UnitedHealth Grp., Inc. v. Lexington Ins. Co.*, No. Civ. 05-1289 DSDSRN, 2006 WL 695523, at *4.

-21-

Furthermore, the past defense and indemnity data set forth herein is just a subset of the defense and indemnity information that Eaton produced or made available to the Insurers. Indeed, the 2016-2020 data was derived from the KCIC Database that the Insurers have been permitted to access to view indemnity payments, both for settlement purposes and for use in this case, since November 2019 (Price Aff, ¶ 3). In addition, Eaton and its underlying insurers have produced hundreds of boxes of hard copy documents reflecting additional defense and indemnity costs incurred for Asbestos Claims (Del Vecchio Dec., ¶ 25).[19] Thus, as the parties continue to work through the data and documents relating to the Asbestos Claims, evidence of exhaustion of all the limits of liability underlying the Insurers' Policies will only improve.

### 3. Cases From this and Other Circuits Are Instructive

Numerous courts have found declaratory judgment claims similar to this one to present an actual controversy.

For example, in *Bankers Trust*, the leading case in the Seventh Circuit on justiciability of declaratory judgment claims against excess insurers, the plaintiff filed such a claim against Old Republic, an excess insurer of a policyholder against which Bankers Trust had filed a $30 million lawsuit. The district court dismissed the case on the grounds that, until Bankers Trust had obtained a judgment against the policyholder, there was no "actual controversy." In reversing this decision, the Court of Appeals first noted that cases holding that "a suit to determine an insurer's obligations to indemnify its insured is premature until the insured has been determined to be liable to somebody . . . state a general rule rather than an absolute one." 859 F.2d at 680. The Court then pointed out that "Article III requires only a probabilistic injury." *Id.* at 681. Observing that "[t]here is a real disagreement between Bankers Trust and

---

[19] The majority of these documents were produced in the Ohio Action. Under Case Management Order No. 3 entered in this action, documents produced in the Ohio Action are deemed produced in this action (Doc. 266, Section III.A).

Old Republic, with the former believing that the $3 million policy that Old Republic issued to [the policyholder] is valid and Old Republic believing not . . ," the Court stated:

> We cannot say that the probability that Bankers Trust, which has sued [the policyholder] for $30 million, will win a judgment in excess of the meager policy limits resulting from the settlement is so slight that Bankers Trust has nothing practical at stake in this case. Were there only a 10 percent chance of its obtaining a judgment in excess of those limits—say a judgment of $5 million—the actuarial value of its claim against Old Republic would still be substantial.

*Id.* Based on this analysis, the Court reversed the district court's dismissal of the case. *Id.*

Eaton has established above that the Asbestos Claim liabilities have already reached the attachment points of five of the Insurers' Policies and that there is a strong practical likelihood that they will reach the Insurers' other Policies as well. Under the *Bankers Trust* analysis, this case is clearly justiciable.

Similarly, in *Tocci,* the policyholder plaintiff had purchased an umbrella policy from National Union. When Tocci tendered a construction claim, the insurer filed a motion to dismiss for lack of justiciability. National Union argued that Tocci had "failed to plead that there is any possibility that [the underlying] policies will be exhausted because the [construction claim complaint] does not allege any damages covered by the [underlying] policies." 780 F. Supp. 2d at 320. However, the court, citing to the standards discussed above, found that:

> Although there has not been final resolution of the question whether [the construction claims] fall within [the underlying] policy coverage, it appears from the Amended Complaint that there is a reasonable likelihood that the relevant claims will exceed the [underlying] policies' limits. Consequently, there is a reasonable likelihood that National Unions' (sic) policies would be triggered, indeed, potentially exhausted as well.

*Id.* at 322-323 (footnote omitted). Thus, even though the court had reached no decision regarding whether the underlying policies had a coverage obligation for the construction claim, let alone that whether the underlying policies would exhaust, the court found the declaratory judgment claim against the excess carrier to be justiciable. *Id.*

In this case, the Insurers have not even questioned that the policies underlying theirs have a coverage obligation. Instead, they rest their entire motions on the notion that those underlying policies may not exhaust. However, as *Tocci* establishes, and as discussed at length above, such a contention does not support dismissal of a declaratory judgment claim where, as here, there is a reasonable likelihood that the excess policies' attachment points will be reached.

Another instructive case is *Seattle Times Co. v. Nat'l Sur. Corp.,* No. C13-1463RSL, 2016 WL 3033498 (W.D. Wash. May 27, 2016). There, the Seattle Times, which had certain environmental liabilities, brought an action against its excess insurer (National Surety) seeking, *inter alia*, a declaration that the latter was obligated to indemnify the Times for those liabilities. National Surety filed a motion to dismiss for lack of justiciability, contending that the claim against it was not ripe because: (i) the liabilities had not yet exhausted the underlying policies; and (ii) the evidence that such exhaustion would actually occur was speculative. The court denied National Surety's motion, first stating that:

> Actions for declaratory judgment in the insurance context frequently involve contingencies — such as whether the insured will be found liable in the underlying tort action or the size of the potential damage award. Courts nevertheless exercise their discretion to hear such disputes given the concreteness of the issues raised and the unequivocal nature of the dispute between the parties. In fact, 'litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real.'

*Id.* at *3 (internal citation omitted). The court went on to explain, "Although there is no hard and fast rule, courts generally find that a claim against an excess insurer is ripe for adjudication if there is a substantial, reasonable, and/or practical likelihood that the dispute will trigger the excess policies." *Id*. (internal citations omitted). The court then reviewed the past costs and the estimates of what might still be incurred and concluded that there was a reasonable likelihood that the National Surety policy would be reached. The court denied the motion to dismiss.

Multiple other cases have applied similar analyses to hold that an actual controversy existed, even if it was not certain that various contingencies would be met and/or that sufficient damages would be incurred. So long as there was a practical likelihood that these things might happen, the courts have found the declaratory judgment claims to be justiciable. *See, e.g., Potter v. Davis*, No. 2:15cv266, 2015 WL 5247709 (E.D. Va. Aug. 31, 2015); *Century Indem. Co. v. Marine Grp., LLC,* 848 F. Supp. 2d 1229 (D. Or. 2012), *order clarified on reconsideration,* No. 3:08-CV-1375-AC, 2012 WL 13054703 (D. Or. Dec. 26, 2012); *Clark Construction Grp., Inc. v. Eagle Amalgamated Service, Inc.*, 2005 WL 946911 (W.D. Tenn. 2005).

As in all of these cases, and for the reasons discussed above, there is at least a practical likelihood that the liabilities arising from the Asbestos Claims will reach the Insurers' Policies. Accordingly, Eaton's declaratory judgment claims present an actual controversy.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the Insurers' motions to dismiss. In the alternative, Eaton requests that the Court grant Eaton leave to amend its Third Amended Complaint and Amended Complaint against Third-Party Defendants to include more specific allegations relating to exhaustion of the underlying policies.

Respectfully submitted this 30th day of June, 2021.

 /s/ Kay M. Brady
Kay M. Brady, Esq.
Michael J. Lynch, Esq.
Paul E. Del Vecchio, Esq.
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
Tel:  412.355.6500
Fax:  412.355.6501
kay.brady@klgates.com
michael.lynch@klgates.com
paul.delvecchio@klgates.com

***Attorneys for Plaintiff Eaton Corporation***