# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**EATON CORPORATION,**
        Plaintiff,

  v.

**WESTPORT INSURANCE COMPANY,**
**et al.**
        Defendants,

**AIU INSURANCE COMPANY, et al.,**
        Third-Party Plaintiffs

  v.

**ALLSTATE INSURANCE CO., et al.**
        Third-Party Defendants.

Case No. 15-C-1157

## DECISION AND ORDER

For several years now, Eaton Corporation has been prosecuting this action against many of its liability insurers, seeking coverage for asbestos claims arising out of the business of its predecessor, Cutler-Hammer, Inc. Over the years, I have decided certain coverage issues, and Eaton has reached settlements with most insurers. However, three of Eaton's high-level excess carriers, Independent Specialty Insurance Company, Fireman's Fund Insurance Company, and Travelers Casualty and Surety Company, have not settled. They now move to dismiss Eaton's claims against them on the ground that there is no realistic probability of Eaton's exhausting the lower-level policies anytime soon. These insurers bring their motions to dismiss under Federal Rule of Civil Procedure 12(b)(1), contending that Eaton's claims are not ripe and therefore do not present a justiciable controversy.

# I. BACKGROUND

Cutler-Hammer, Inc., was a Wisconsin company that had its headquarters in Milwaukee from 1899 to 1979. In 1979, Cutler-Hammer merged into Eaton, with Eaton being the surviving entity. Eaton is incorporated in Ohio and has its principal place of business there.

In the present suit, Eaton alleges that, since the 1980s, it has been subject to tens of thousands of personal-injury claims alleging exposure to asbestos in Cutler-Hammer products. Eaton generally alleges that it "and its underlying insurers have paid millions of dollars in defense and indemnity costs" for Cutler-Hammer claims. ECF No. 292 ¶ 18; ECF No. 293 ¶ 20. Eaton also alleges that it "expects to continue to be named in additional [Cutler-Hammer claims] in the future." ECF No. 292 ¶ 19; ECF No. 293 ¶ 21. Over the course of this suit, which Eaton filed in 2015, Eaton has asserted claims against dozens of insurers and has reached settlements with most of them. When Eaton filed its latest amended pleadings on March 19, 2021, only thirteen insurers remained. Since that time, Eaton has reached settlements with most of the insurers still named as defendants. Currently, only four insurers remain: (1) Saturn Insurance Company Limited; (2) Independent Specialty Insurance Company, (3) Fireman's Fund Insurance Company; and (4) Traveler's Casualty and Surety Company. The pending motions to dismiss are brought by the latter three defendants. Because Independent Specialty Insurance Company and Fireman's Fund Insurance Company are affiliated, I will refer to them collectively as "FFIC."

FFIC and Travelers each issued excess insurance policies to Eaton that offer coverage only after the coverage available under specific lower-level policies has been

exhausted. In its pleadings, Eaton alleges that FFIC issued seven excess policies that cover Cutler-Hammer asbestos claims, one for every policy period from 1979–80 to 1985–86. The policy limits range from $5 million to $30 million, depending on the year. The amount of underlying insurance that Eaton must exhaust to reach the FFIC policies varies each year, from $45 million above the limits of the applicable primary policy for 1979–80 to $200 million above the limits of the applicable primary policy for 1983–84 and 1984–85. The facts relating to the Travelers policies are similar. It issued four excess policies that allegedly cover Cutler-Hammer asbestos claims with policy limits between $10 million and $25 million. Travelers issued two policies that cover the period 1980–81: one that applies after Eaton has exhausted $50 million in coverage above its primary policy, and one that applies after Eaton has exhausted $100 million in coverage above its primary policy. The Travelers policies for 1981–82 and 1982–83 each apply after Eaton has exhausted $150 million in coverage above the primary policy.

Eaton does not allege that either FFIC or Travelers breached its policies by failing to provide coverage that is currently owed. Instead, Eaton seeks a declaratory judgment against each insurer as to the meaning of certain policy language. Specifically, Eaton seeks a declaratory judgment against each insurer regarding the issues of "trigger" and "allocation of coverage." These are issues I discussed in prior opinions in this case that involved Eaton's claims against other insurers. *See Eaton Corporation v. Westport Insurance Company*, 387 F. Supp. 3d 931 (E.D. Wis. 2019); *Eaton Corporation v. Westport Insurance Company*, No. 15-C-1157, 2018 WL 11322602 (E.D. Wis. Sept. 27, 2018). The issue of trigger refers to determining whether a covered injury occurred during the policy period. As applied to a claim for personal injuries caused by asbestos, this issue

3

can present thorny questions. That is so because, unlike personal injuries caused by an accident, asbestos injuries typically develop over long periods. A person may have been exposed to asbestos in the insured's products over a period of many years, and a diagnosable disease might not manifest itself until decades after exposure. Many different liability insurance policies may have been in force during the years between first exposure and manifestation. The issue of "trigger" asks which of these policies should be deemed to cover the eventual asbestos claim. *See Eaton Corp.*, 387 F. Supp. 3d at 934.

The second issue—allocation of coverage—addresses how to allocate coverage to a triggered policy when a claimed injury does not occur entirely within the policy period. Again, this problem arises because asbestos injuries develop over long periods. The harm occurs over many years, including years in which the triggered policy was not in force. Allocation asks whether, once a policy is triggered, the insurer must pay for all damage caused by the claim even though the injury occurred partly within and partly outside the coverage period. *Id.* at 934–35.

Different jurisdictions have taken different approaches to both trigger and allocation of coverage. In the prior proceedings relating to Eaton's claims against other insurers, I determined that Wisconsin law applied to their policies and that, under such law, the so-called "continuous trigger" and "all sums" allocation method applied. Under the continuous-trigger theory, an asbestos claim triggers all policies in force from the time of the claimant's first exposure to asbestos through the time of manifestation of the claimant's disease. *Id.* at 934. Under the all-sums allocation method, an insurer must pay for all damages resulting from an injury (up to the policy limit) so long as the injury triggered the policy. *Id.* at 934–35.

When both the continuous-trigger rule and the all-sums allocation method apply to a group of insurance policies issued over a series of years, the insured has the right to allocate all asbestos losses to a single triggered year and then work its way up the layers of insurance for that year, starting with the primary policy and spiking upward through the umbrella and all excess layers for that year. Once the limits of all policies for the year are exhausted, the insured may then repeat the process and work its way up the coverage tower for another year. *See Westport Ins. Corp. v. Appleton Papers Inc.*, 327 Wis. 2d 120, 165 (Ct. App. 2010).

In the present case, Eaton seeks a declaratory judgment providing that the continuous-trigger rule and the all-sums allocation method apply to the high-level excess policies issued by FFIC and Travelers. However, FFIC and Travelers contend that Eaton's claim for such a declaratory judgment is not ripe. According to FFIC and Travelers, Eaton has not demonstrated that it is close to exhausting the lower-level policies to which the FFIC and Travelers policies are excess. They point out that Eaton's pleadings do not allege facts suggesting that the underlying policies have been exhausted. They further note that, based on information they have obtained, it appears that Eaton is not even close to exhausting the lower-level policies issued by other insurers in each of the applicable policy years. Thus, FFIC and Travelers contend, Eaton's claims against them must be dismissed without prejudice for failure to present a justiciable controversy.

## II. DISCUSSION

The parties agree that the ripeness issues raised in the insurers' motions to dismiss implicate the court's subject-matter jurisdiction, and that therefore the insurers' motions are properly brought under Federal Rule of Civil Procedure 12(b)(1). In

5

considering such a motion, I am not bound by the allegations of the complaint and may consider any pertinent evidence. *See Amling v. Harrow Industries LLC*, 943 F.3d 373, 376 (7th Cir. 2019). As the proponent of federal jurisdiction, Eaton has the burden to show that its claims are ripe.[1] *See, e.g., Fox v. Dakkota integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020).

Eaton's claims for declaratory relief are brought under the Declaratory Judgment Act, 28 U.S.C. § 2201. That act provides in relevant part that "[i]n a case of actual controversy within its jurisdiction," a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "case of actual controversy" in the Declaratory Judgment Act "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Amling*, 943 F.3d at 377 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). The requirements of the Act and those of Article III are therefore coextensive. *Id.*

One aspect of the case-or-controversy requirement is ripeness. Declaratory judgment actions are ripe when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

---

[1] Eaton initiated the present action by filing a complaint in Wisconsin state court against former defendant Westport Insurance Corporation, and then Westport removed the case to this court under the diversity jurisdiction. Thus, at the outset of this case, Eaton was not the proponent of federal jurisdiction. However, because Eaton opposes the dismissal of its claims against FFIC and Travelers and has not requested either a remand to state court or a voluntary dismissal without prejudice so that it can refile its claims in state court, I treat Eaton as the current proponent of federal jurisdiction.

6

*MedImmune*, 549 U.S. at 127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). An action for declaratory relief is unripe when "a plaintiff's asserted injury may depend on so many future events that a judicial opinion would be advice about remote contingencies." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006).

In the present case, FFIC and Travelers contend that Eaton is so far from reaching the "attachment points"[2] of their policies that a declaration interpreting the terms of those policies would be advice about remote contingencies. FFIC and Travelers point out that Eaton's complaint does not allege facts suggesting that Eaton is close to exhausting the policies beneath theirs. Instead, they note, Eaton simply alleges that it and its insurers "have paid millions of dollars in defense and indemnity costs" related to asbestos suits and that Eaton "expects to continue to be named" in additional suits. ECF No. 292 ¶¶ 18–19; ECF No. 293 ¶¶ 20–21.

In response to the motions to dismiss, Eaton argues that if, as it believes, the continuous-trigger rule and the all-sums allocation method apply to the policies issued by FFIC and Travelers, then it has already reached the attachment points of certain of the defendants' policies. Eaton then contends that, based on the quantity of outstanding and likely future Cutler-Hammer asbestos claims, it is practically likely to eventually reach the attachment points of the remaining FFIC and Travelers policies. For these reasons, Eaton says, its claims for declaratory relief involving all policies issued by FFIC and Travelers

---

[2] The term "attachment point," when used in reference to excess liability policies, means the amount in covered claims that must be satisfied by underlying primary and excess insurers before the excess insurer's obligation to pay arises. *See Westport Ins. Corp.*, 327 Wis. 2d at 137 n.13.

are ripe. However, as I explain below, Eaton's ripeness argument rests on a flawed understanding of how an insured may exercise its rights under the all-sums allocation method. Once this flawed understanding is set aside, it becomes clear that Eaton has not presented evidence showing that its claims for declaratory relief are "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.

Eaton does not rely on the allegations of its pleadings to show that its claims against FFIC and Travelers are ripe. Instead, it submits evidence outside the pleadings, primarily an affidavit from its in-house counsel describing the amounts that Eaton has paid through 2020 in connection with Cutler-Hammer asbestos claims. *See* Aff. of Charles D. Price, ECF No. 323. According to this affidavit, since the 1980s, "Eaton and its insurers have paid at least $200,646,232 in indemnity and defense costs" relating to Cutler-Hammer asbestos claims. *Id.* ¶ 10. The affidavit states that "over $100 million" of these indemnity and defense costs was paid between 2016 and 2020. *Id.* ¶ 9. Finally, the affidavit states that "Eaton expects that it will continue to be named in [Cutler-Hammer asbestos claims] and that it will continue to incur defense and indemnity costs in connection with such Claims in the future." *Id.* ¶ 12.

Eaton provides very little information about which of its insurers contributed to the approximately $200 million that has been paid on Cutler-Hammer claims. Eaton explains that Continental Insurance Company issued all primary and first-layer excess (or umbrella) policies for the years in which FFIC and Travelers issued high-level excess policies, and it produces evidence that all Continental policies have been exhausted. In its briefs, Eaton does not identify the amount of coverage provided by all Continental

8

primary and excess policies, but it appears that the limits of one of the primary policies was $1 million and that the limits of one of the excess policies was $10 million. *See* Br. in Opp. at 15–16, ECF No. 322 (chart showing limits of policies for policy year 1980–81). However, because the Continental policies were all exhausted by March 2015, *see* ECF No. 324-20, and because Eaton and its insurers have paid at least $100 million in Cutler-Hammer claims between 2016 and 2020, it can be inferred that Eaton has incurred at least $100 million in Cutler-Hammer losses above the limits of all Continental primary and first-layer excess policies.

Eaton must exhaust multiple layers of additional excess insurance above the Continental excess policies before reaching the high-level FFIC and Travelers policies at issue in this case. For the 1980–81 policy year, for example, there are three intermediate excess policies which together provide $40 million in coverage that Eaton must exhaust before the FFIC or Travelers policies attach. *See* Br. in Opp. at 15–16 (chart). In other years, intermediate excess policies provide as much as $80 million in coverage. *See* FFIC Br. in Supp. at 4–5 (chart showing unexhausted limits below FFIC's policies). Eaton does not provide any information about whether it has exhausted the intermediate excess policies.

Instead of explaining how it has allocated its losses among its various policies, Eaton argues that, because it has shown that it incurred $100 million in asbestos losses above the primary and first-layer excess policies below FFIC's and Travelers', it can show that it has already reached the attachment points of "at least five" of the FFIC and

9

Travelers policies.[3] Br. in Opp. at 14. Eaton does this by claiming that it has the right, under the all-sums allocation method, to select the policy year or years from which to seek coverage from its insurers. According to Eaton, it can take the $100 million in past payments and allocate that entire sum to a single policy year. Once that occurs, all the policies that underlie the FFIC and/or Travelers policies in that year will be deemed exhausted.

Eaton gives three examples of how this would work. First, it uses the 1980–81 policy period, in which both FFIC and Travelers issued excess policies that attach at $50 million and Travelers issued a second excess policy that attaches at $100 million. If Eaton allocated the entire $100 million in losses to the 1980–81 policy period, the attachment points of all three policies will have been met. Second, Eaton uses the 1979–80 policy period, in which FFIC issued an excess policy that attaches at $45 million. Again, if Eaton allocated the entire $100 million to the 1979 policy year, the attachment point of this policy will have been met. Third, Eaton uses the 1985–86 policy period, in which FFIC issued an excess policy that attaches at $100 million. Assigning the entire $100 million in losses to this policy period would result in the attachment point being met.

There are several problems with Eaton's proposed method for showing exhaustion, which all involve a misunderstanding of Eaton's rights under the all-sums

---

[3] Eaton seeks a declaratory judgment with respect to eleven policies, so even if Eaton could show that it reached the attachment points of five policies, it would not have shown that all its claims for declaratory relief are ripe. In any event, as explained in the text, Eaton has not shown that it has reached the attachment points of any FFIC or Travelers policy, so this additional problem can be ignored.

10

allocation method.[4] First, Eaton assumes that it has reached the attachment points of the high-level policies in the identified years even though, by its own admission, it "has not yet selected the policy year or years from which to seek coverage." Br. in Opp. at 15 n.14. In other words, Eaton admits that it has not actually allocated any of its losses to the policies beneath FFIC's and Travelers' in any given year. Eaton claims that it is not required to select a policy year "at this juncture," *id.*, but it cites no authority and offers no explanation for this position. Nor does Eaton indicate when it will decide how to allocate its losses. However, a dispute between Eaton and the high-level insurers over the meaning of their policies could not be ripe if Eaton has not yet allocated its losses to any of the years in which FFIC and Travelers issued policies. That is so because, if Eaton has not already allocated its losses to a policy year, it has not yet made a claim against the policies issued in that year. *See Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 769 N.E.2d 835, 841 (Ohio 2001) (stating that, under the all-sums method, the insured has the right to select the policies "against which it desires to make a claim"). It appears that Eaton is seeking a declaration that it will have the right to make claims against the policies if, at some unknown point in the future (which may never arrive), Eaton decides to allocate $100 million (or some other large amount) of its Cutler-Hammer losses to a policy year in which FFIC and/or Travelers issued a policy. But that is a classic request for "advice about remote contingencies" that a federal court lacks jurisdiction to entertain.

---

[4] I should also note that the very issue on which Eaton seeks declaratory relief is whether the continuous-trigger rule and the all-sums allocation method apply to FFIC's and Travelers' policies. However, for purposes of determining whether Eaton's claim for declaratory relief is ripe, I can assume that they do apply. That is so because if Eaton's interpretation of the policies results in immediate coverage, then a dispute over whether that interpretation is correct would be ripe.

11

*Meridian*, 441 F.3d at 538. Perhaps it would be useful for Eaton to know that it can someday look to FFIC and Travelers to cover its asbestos liabilities if the need arises and it chooses to do so, "[b]ut the utility of judicial advice is precisely what one cannot point to in support of federal jurisdiction." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 682 (7th Cir. 1992).

A second problem with Eaton's proposed exhaustion method is that it uses the same $100 million loss multiple times to reach FFIC and Travelers policies in different years. This is perhaps best exemplified by Eaton's using the same $100 million to reach the $100 million attachment point of Travelers' highest-level excess policy in 1980–81 *and* the $100 million attachment point of FFIC's excess policy in 1985–86. Br. in Opp. at 15–16. As explained, under the all-sums allocation method, Eaton may select a policy year, allocate its covered losses to that year, and work its way up the coverage tower for that year. But once Eaton allocates a loss to a policy year, it cannot reallocate those same losses to a different year. If Eaton could allocate the same loss to multiple policy years, then Eaton would be recovering twice for the same loss. Yet the all-sums allocation method does not entitle Eaton to a double recovery. *Cf. Muller v. Society Ins.*, 309 Wis. 2d 410, 422 (2008) (noting that an insured should be precluded from recovering twice for the same loss).

A final problem with Eaton's proposed exhaustion method is that it assumes Eaton has not already allocated at least some of the $100 million in losses to specific policy years. This is a problem because the evidence suggests that Eaton has already allocated its losses among multiple policy years by accepting payments under policies that cover different policy years. The $100 million that Eaton repeatedly uses in the above examples

12

was paid by "Eaton *and its insurers*." Price Aff. ¶ 9 (emphasis added). Whatever payments were made by insurers pursuant to their policies must remain allocated to the policy years for which they were paid. Otherwise, Eaton would recover twice for the same loss: once for the policy period for which the insurer paid, and once for the policy period to which Eaton decides to reallocate the loss.[5] At this point, because Eaton has not identified the amounts paid by its other insurers or identified the policies pursuant to which those amounts were paid, I do not know how the sums Eaton received from its other insurers were allocated. Thus, I am unable, based on the evidence Eaton has submitted, to find a realistic probability that Eaton remains free to allocate the entire $100 million in losses to a year of its choosing.

For the reasons stated above, I conclude that Eaton has not shown that it has already reached the attachment points of any FFIC or Travelers policy. But Eaton also contends that even if it has not reached the attachment points of the policies, its claims for declaratory relief are ripe because there is a "practical likelihood" that its asbestos liabilities will reach the relevant attachment points "at some later date." Br. in Opp. at 18–19. Eaton cites several cases that stand for the proposition that a claim for declaratory relief against an excess insurer may be ripe even if it is unknown whether a loss will turn

---

[5] Even if Eaton did not try to recover its losses a second time from the lower-level insurers in the second policy year, FFIC and Travelers would have a right to contribution or indemnification from the insurers below them, and then the lower-level insurers would have a right to seek pro-rata contribution from insurers in other policy years. *See Eaton Corp.*, 2018 WL 11322602, at *4–5. Eaton's having already collected from the insurer in the original policy year would impair the contribution rights of the insurers in the second year, since the insurer who already paid its policy limits could not be forced to pay additional amounts in contribution. Ultimately, then, Eaton's attempt to reallocate a loss for which it has already received payment to a different policy year would impermissibly double the loss.

13

out to be large enough to reach the insurer's attachment point. These cases state that a claim against an excess liability insurer is ripe so long as there is a "practical likelihood" that the insured will be found liable for damages in an amount that reaches the excess insurer's attachment point. *See Assoc. Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992); *Seattle Times Co. v. Nat'l Sur. Corp.*, No. C13-1463RSL, 2016 WL 3033498, at *3 (W.D. Wash. May 27, 2016); *Tocci Bldg. Corp. of New Jersey, Inc. v. Virginia Sur. Co.*, 750 F. Supp. 2d 316, 321 (2010). In each of the cases Eaton cites, the insured offered an estimate of its expected liability in an underlying dispute, and the question for the court was whether the insured's estimate was realistic. *See Assoc. Indem. Corp.*, 961 F.2d at 35–36; *Seattle Times*, 2016 WL 3033498, at *3–4; *Tocci*, 750 F. Supp. 2d at 321–23.

I agree with Eaton that a claim for declaratory relief against an excess insurer may be ripe when there is a practical likelihood that the excess insurer's attachment point will be reached by the time a pending underlying dispute is resolved. But the problem in this case is that Eaton has not demonstrated that it is practically likely to ever reach the attachment points of FFIC's and Travelers' policies. Eaton has not offered an estimate of its expected liabilities from asbestos claims or shown that those liabilities are practically likely to be so great as to reach the high-level excess policies at issue. All Eaton has done is disclose that it and its insurers have spent $200 million on asbestos liabilities since Eaton acquired Cutler-Hammer in 1979, and that it is likely to incur an unknown amount of additional liability in the future.[6] Given the very high attachment points of the eleven

---

[6] Eaton also claims that $200 million likely understates its past costs because some of them are reflected only in hard-copy files that Eaton has not reviewed. *See* Br. in Opp. at

14

policies at issue in this case, it appears that Eaton has more than $1 billion in coverage available from the intermediate excess policies beneath FFIC's and Travelers' in the years 1979–80 to 1985–86 alone. *See* FFIC Br. in Supp. at 2 (chart showing underlying limits of seven FFIC policies, which add up to $895 million); Travelers Br. in Supp. at 2 (chart showing attachment point of four Travelers policies, which add up to $450 million). Eaton's having spent approximately $200 million over more than 40 years is not evidence that Eaton is practically likely to exhaust $1 billion in underlying insurance. Eaton emphasizes that $100 million was spent between 2016 and 2020 alone, but no evidence suggests that Eaton is likely to continue incurring asbestos liability at the rate of $100 million every four years. And even if Eaton were likely to continue incurring liability at that rate, it would still take 32 years to exhaust $1 billion in underlying insurance.[7] Clearly, a suit over the meaning of insurance policies that might not provide coverage until 32 years from now is not a controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127. Moreover, as discussed above, although the all-sums allocation method generally allows an insured to allocate all its losses to a single year and spike upwards to the highest-level excess policies for that year, Eaton has not yet allocated all its losses to a single policy year, and it may now be too late for it to do so. Therefore, I cannot find that Eaton is practically likely to reach the

---

6 n. 8, 22. Because Eaton has not submitted evidence of the amount of the costs reflected in these hard-copy files, I cannot say that such costs contribute to a practical likelihood that Eaton will reach FFIC's or Travelers' attachment points.

[7] My calculation favorably assumes that Eaton has already exhausted $200 million in intermediate excess coverage, even though some of those costs must have been allocated to primary policies. It would take 32 years to exhaust the remaining $800 million at the rate of $100 million every four years.

15

attachment point of any single FFIC or Travelers policy anytime soon. Accordingly, Eaton has not carried its burden to show that its claims against FFIC and Travelers are ripe.

For these reasons, I must dismiss Eaton's claims against FFIC and Travelers without prejudice for lack of subject-matter jurisdiction. In its briefs, Eaton asks that if I dismiss those claims, I also grant it leave to amend its pleadings to "include more specific allegations relating to exhaustion of the underlying policies." Br. in Opp. at 25. However, as discussed above, in considering a motion to dismiss for lack of jurisdiction, a court is not bound by the allegations of the pleadings and may consider any pertinent evidence. *Amling*, 943 F.3d at 376. Eaton took advantage of this rule by filing the Price Affidavit and other evidence concerning exhaustion. Thus, Eaton has already had an opportunity to provide whatever information concerning exhaustion it wanted the court to consider, and Eaton has not explained what additional information relating to exhaustion it might provide. For these reasons, it seems to me that granting leave to amend would be futile.

Still, because a dismissal for lack of jurisdiction is without prejudice, Eaton will always be free to file a fresh complaint against FFIC and Travelers, either here, in state court, or in another federal court. If Eaton wishes to re-file its claims as part of this action, it may, while this case remains pending, file a motion for leave to amend its pleadings that explains how the amendment cures the ripeness problems identified in this opinion. (Eaton's claims against Saturn have not been dismissed, so this case will remain pending for at least a little longer.)

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that FFIC's and Travelers' motions to dismiss (ECF Nos. 306 & 311) are **GRANTED**. The claims against FFIC and Travelers in

the Third Amended Complaint and the Amended Complaint Against Third-Party Defendants are dismissed without prejudice for lack of subject-matter jurisdiction.

Dated at Milwaukee, Wisconsin, this 15th day of October, 2021.

s/Lynn Adelman  
LYNN ADELMAN  
District Judge

17

Case 2:15-cv-01157-LA   Filed 10/15/21   Page 17 of 17   Document 332